UNITED STATES of America, Appellee,

v.

Alfred E. SANDRIDGE, a/k/a Eddie, Appellant.

UNITED STATES of America, Appellee,

v.

Salvatore CARROLLO, Appellant.

Nos. 84–2024, 84–2043.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1985.

Decided Aug. 27, 1985.

Rehearing Denied Oct. 4, 1985.

Thomas J. Cox, Kansas City, Mo., for appellant.

Edward D. Holmes, Dept. of Justice, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Defendants Alfred E. ("Eddie") Sandridge and Salvatore ("Sam") Carrollo each were convicted by a jury of conspiring to

counterfeit United States currency in violation of 18 U.S.C. § 371 (Count I) and of willfully causing the counterfeiting of United States currency in violation of 18 U.S.C. § 471 (Count II). Defendants appeal from the judgment of the District Court[1] that was entered upon the convictions. We affirm.

It is undisputed that in late 1981, a counterfeiting scheme was launched in Kansas City, Missouri. It appears from the record that the instigator of this operation was Woodie Sandridge, and that the aims of the operation were to produce and reap profits from the passing of counterfeit twenty-dollar bills. Among those asked to participate was Bobby Gene Jones. Unbeknownst to Woodie Sandridge, however, Jones had been a paid government informant since 1978.

The record contains a great deal of evidence concerning numerous individuals who during late 1981 and early 1982 provided "expertise" and start-up capital for the operation, and who were involved in acquiring the necessary supplies and equipment. It is the testimony of Jones, the government's principal witness at trial, that directly links the defendants to the operation. Jones testified that in the spring of 1982, defendants contributed significant amounts of capital to finance further the counterfeiting operation started by Woodie Sandridge.

Jones was arrested in California in late June 1982,[2] and shortly thereafter, entered the Federal Witness Protection Program. There is no indication in the record that prior to Jones's arrest any counterfeit currency actually was produced or passed by the involved individuals.

In February 1983, Woodie Sandridge supplied three individuals with counterfeit twenty-dollar bills and sent them to Dallas, Texas to pass the bills. One of the individuals was arrested in Dallas.

The government's theory of this case essentially is that a single, overall conspiracy to counterfeit began in late 1981 and terminated after the arrest of the individual who passed counterfeit twenty-dollar bills in Dallas. Defendants thus were charged in Count I with conspiracy and in Count II with willfully causing the counterfeiting of United States currency, *i.e.*, partially financing Woodie Sandridge's counterfeiting operation, which act caused the production of the counterfeit twenty-dollar bills that were passed in Dallas, Texas in February 1983. Defendants contend, however, that there were two conspiracies. They argue that the first conspiracy began in late 1981 and ended with the arrest of Jones in late June 1982. This argument is founded upon defendants' characterization of Jones as the principal conspirator and upon their claim that his arrest signaled the end of the conspiracy that he had steered since late 1981. According to defendants, a second conspiracy began and ended in early 1983.

In conformity with their theory of the case, defendants' chief claims on appeal are (1) that they are entitled to reversal on Count II (willfully causing the counterfeiting of currency) because there was no evidence directly linking them to the production of the particular bills that were passed in Dallas in February 1983, and (2) that since there was no evidence linking them to this "1983 conspiracy," the District Court's admission of evidence concerning the events of 1983 was erroneous and improperly influenced the jury's consideration of defendants' involvement in the "1981–82 conspiracy," thus entitling them to a reversal on Count I. Because we have determined that the record supports the government's position that defendants participated in a single, overall conspiracy to counterfeit that began in late 1981, lasted until February 1983, and included the passing of counterfeit twenty-dollar bills in Dallas in February 1983, we reject these claims by defendants.

---

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

2. Jones apparently was arrested on unrelated state charges.

At the outset, we note that the record contains evidence negating defendants' claim that Jones was the principal conspirator, or in fact that he was a conspirator at all. Jones testified that he never intended to join the conspiracy and that he took various steps unknown to the conspirators to thwart its objectives. Of course, Jones's actions might have led to the true conspirators to believe that he was one of them, but it is not surprising that Jones would maintain such an appearance to avoid being identified as a government informant. Furthermore, there is evidence that Woodie Sandridge was indeed the principal conspirator; there is evidence that he instigated the conspiracy, that he was in control of the operation when defendants contributed operating capital, and that he remained in control when he supplied individuals with counterfeit twenty-dollar bills and sent them to Dallas to pass those bills. Because we believe the jury easily could have viewed the evidence as establishing that Woodie Sandridge was the driving force behind this conspiracy, we reject defendants' allegation that the conspiracy must have ended with Jones's arrest in June 1982.

It also is clear from the record that at the time this operation was commenced by Woodie Sandridge, the objectives of the operation were to produce, and to profit from the passing of, counterfeit twenty-dollar bills. Those objectives did not change when, according to Jones's testimony, defendants joined the scheme by providing operating capital.[3] We acknowledge that there is no evidence of any additional acts being committed by defendants in furtherance of these objectives.[4] But neither is there any evidence that these objectives, which had been those of the operation since late 1981, (and which became the objectives of defendants when they infused the operation with working capital) were abandoned. The jury reasonably could conclude that it was these continuing objectives that finally were being achieved when Woodie Sandridge provided individuals with bogus twenty-dollar bills to be passed in Dallas.

"To resolve the question of whether the government's proof showed that one or multiple conspiracies existed, we must determine 'whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy.'" *United States v. DeLuna*, 763 F.2d 897, 918 (8th Cir.1985) (quoting *United States v. Jackson*, 696 F.2d 578, 582 (8th Cir.1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983)). Having reviewed the record and having considered defendants' arguments, we hold that the evidence establishes that an overall agreement to counterfeit began in late 1981, was joined by defendants in early 1982, and resulted in the production and passing for profit of counterfeit twenty-dollar bills in Dallas in February 1983. Defendants thus were properly convicted on Counts I and II.

Defendants also allege misconduct on the part of a government agent and the prosecuting attorney. We have considered both of these claims and find them to be without merit.

The convictions are affirmed.

---

**3.** The jury reasonably could have based its finding that defendants were connected to this counterfeiting scheme on Jones's testimony alone. There was, however, other evidence which corroborated Jones's testimony; Jones's former wife testified that although she did not hear their conversations, she went with Jones on at least one occasion to a business operated by defendants so that Jones could meet with Woodie Sandridge and both defendants, and that she had been to that business location on numerous occasions when Jones met with defendant Eddie Sandridge. We note that the jury was given the opportunity to weigh Jones's testimony in light of Jones's history, *i.e.*, that he was a paid informant, that he admitted to having given perjured testimony in the past, and that he was a convicted criminal.

**4.** The lapse of time between defendants' contributions of capital and the events of early 1983 does not require that this case be viewed as one involving multiple conspiracies. *See United States v. Ben M. Hogan Co.*, 769 F.2d 1293, 1302 n. 14 (8th Cir.1985).