**UNITED STATES of America, Appellee,**

v.

**Jose Antonio PEYRO, Appellant.**

No. 85–1610.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1985.

Decided March 17, 1986.

R. Thomas Day, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Charles A. Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jose Antonio Peyro appeals from a conviction after a jury trial on charges stemming from his role in a conspiracy to distribute cocaine.[1] For reversal, Peyro ar-

---

**1.** Peyro was convicted in five counts charged as follows: conspiracy to distribute cocaine, 21 U.S.C. § 846 (1982); two counts of distribution of cocaine, 21 U.S.C. § 841(a) (1982); use of a

gues that the district court:[2] (1) violated his sixth amendment right to confrontation when it foreclosed his cross-examination of a witness who had purchased cocaine from him as to how the cocaine was further distributed; (2) improperly admitted prejudicial evidence of an unrelated conspiracy; (3) erred in refusing to grant a mistrial or strike the testimony of a witness alleged incompetent; and (4) improperly denied a motion for mistrial when the prosecutor stated in closing that Peyro had lied on the witness stand. We affirm.

Robert Ferguson, a St. Louis carpenter and narcotics dealer who turned informant and witness after being arrested, testified that he met Peyro in December, 1982, through Jesus Pupo. Ferguson had been purchasing marijuana and cocaine for resale from Pupo. Peyro—who, Ferguson testified, was introduced by his nickname, "Flaco"—was Pupo's supplier. Ferguson proposed that he and Peyro deal with each other directly, to eliminate Pupo as middleman. Peyro's superior, co-defendant Jorge Lorente,[3] flew to St. Louis from Miami to discuss the offer, and on December 16, 1982, the deal was struck. Lorente told Ferguson in Peyro's presence that he had cocaine for sale in both Miami and California. Ferguson chose to deal through Miami, and thereafter flew to that location, obtained the contraband from Lorente and Peyro, and returned by car to St. Louis. Peyro followed to St. Louis and Ferguson paid him $35,000 for the supply. Ferguson further testified that in the succeeding two months, he purchased $135,000 worth of cocaine from the Lorente organization. Once, Peyro drove from Miami to St. Louis to deliver a half-kilogram of cocaine to Ferguson.

These events formed the basis of the five count indictment. Peyro later was convicted in a jury trial on all counts charged. This appeal followed.

## I.

Peyro complains that he was denied his sixth amendment right to confrontation when the district court barred his cross-examination of Ferguson regarding how he had disposed of the drugs obtained from Peyro. Peyro claims that further questioning was needed to challenge the truth of Ferguson's charge that Peyro sold him drugs. The need for such inquiry assumed unusual urgency, Peyro argues, because the government's case against him was supported almost entirely with testimonial evidence.

■■■ Cross-examination is the principal means by which the credibility of a witness and the truth of the testimony are checked, and therefore must be accorded great respect. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Where the defendant seeks to challenge the credibility of a government witness who testifies in exchange for money or immunity, as is the case here, especially wide latitude must be allowed. *See District of Columbia v. Clawans,* 300 U.S. 617, 630–31, 57 S.Ct. 660, 664–65, 81 L.Ed. 843 (1937). Nonetheless, courts long have recognized that the trial judge must retain discretion to limit the scope of cross-examination. *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). Reversal therefore is warranted only where an abuse of discretion leads to prejudice. *United States v. Lee,* 743 F.2d 1240, 1249 (8th Cir.1984); *United States v.*

communication facility to facilitate the distribution of cocaine, 21 U.S.C. § 843(b) (1982); and interstate travel to facilitate the distribution of cocaine, 18 U.S.C. § 1952(a) (1982). Peyro was sentenced to an aggregate term of imprisonment of 20 years to be followed by a special parole term of 10 years.

**2.** The Honorable William L. Hungate, United States District Court for the Eastern District of Missouri.

**3.** Lorente was named as a defendant in several counts of the indictment, but was deceased at the time of trial. His wife, Hermania Lorente, the third co-defendant, was tried jointly with Peyro and was acquitted by the jury on the two counts in which she was named.

*Cole*, 449 F.2d 194, 199 (8th Cir.1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991, 30 L.Ed.2d 806 (1972).

■ In this case, the trial court acknowledged Peyro's interest in testing the truth of Ferguson's assertion that Peyro had sold him cocaine and marijuana. To this end the court permitted defense counsel to examine Ferguson as to what types and quantities of drugs he had obtained from Peyro, and whether he had resold to dealers or to users. However, the court reasoned that whether Ferguson ultimately had resold the cocaine, or indeed to whom, was not relevant to Peyro's case. It would not alter the nature of Peyro's charged offense. Tr. II, 54. The court further recognized the improbability of any of those named by Ferguson coming forth to corroborate the identification. Therefore, to prevent delay and confusion resulting from unnecessary testimony, the court foreclosed further cross-examination. We cannot say that in so ruling the district court abused its discretion or prejudiced Peyro.

## II.

At trial, the government displayed to the jury 10½ kilograms of cocaine, worth one million dollars, seized in California on December 20, 1982, from Steven Musick. Musick had obtained the cocaine from Lorente. The government characterized the display as having been confiscated from the Lorente conspiracy, of which it argued Lorente, Musick, and Peyro were members. Peyro claims that the 10½ kilograms of seized cocaine admitted into evidence related solely to the California distribution conspiracy, in which he was not involved; that it was irrelevant to his participation in the conspiracy to distribute cocaine in St. Louis, and therefore inadmissible against him; and that its improper admission unfairly prejudiced his right to a fair trial.

■ The essence of a conspiracy is an agreement between two or more persons to commit an illegal act. *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975); *United States v. American Grain & Related Industries*, 763 F.2d 312, 315 (8th Cir.1985). The question thus arises whether the agreement between Lorente and Musick to distribute cocaine in California, and that between Lorente and Peyro to distribute in St. Louis, were mere "separate adventures of like character," *Kotteakos v. United States*, 328 U.S. 750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946), or whether each was an aspect of an overall agreement to engage in a single conspiratorial adventure. *United States v. Sandridge*, 770 F.2d 744, 746 (8th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986); *United States v. Jackson*, 696 F.2d 578, 582–83 (8th Cir.1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). The existence of multiple groups of individuals does not preclude the possibility of there being one overall conspiracy. *United States v. Snider*, 720 F.2d 985, 988 (8th Cir.1983), *cert. denied*, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). On the other hand, a single conspiracy is not proven by a mere overlap of personnel or knowledge of another's illegal conduct. *United States v. Richmond*, 700 F.2d 1183, 1190 (8th Cir.1983). Rather, to prove that individual agreements among separate conspirators were made to advance a single enterprise, the government must show that the conspirators each were motivated by a common purpose. *Snider*, 720 F.2d at 988; *Jackson*, 696 F.2d at 582–84. Only if the government established by a preponderance of the evidence the existence of a single conspiracy in which Peyro participated was admission of the cocaine proper. *See* Fed.R.Evid. 104(b); *see also United States v. Magnuson*, 680 F.2d 56, 58 (8th Cir.1982) (involving admissibility of a statement by a coconspirator); *United States v. Bell*, 573 F.2d 1040, 1043–45 (8th Cir.1978) (same). To make this showing, circumstantial evidence, especially evidence of concerted activity toward achievement of the common goal, is as probative as direct evidence. *United States v. Michaels*, 726 F.2d 1307, 1311 (8th Cir.), *cert. denied*, —

U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).[4]

■ Three strands of evidence support the government's assertion that Peyro participated in the Lorente conspiracy which included the distribution of cocaine in California, thus rendering the cocaine seized from Musick in California admissible against Peyro. First, Ferguson testified that on December 16, 1982, Lorente offered, with Peyro's assistance and in his presence, to sell Ferguson cocaine that he had in California. Testimony by Musick demonstrated that on that date, Musick possessed 2½ kilograms of cocaine obtained from Lorente. Testimony by Craig Peterson, the Los Angeles Police Department officer who arrested Musick, showed that the 10½ kilograms admitted into evidence was seized from Musick on December 20, 1982, four days later. Second, Musick admitted that he had dealt with a man named "Flaco" when obtaining cocaine from Lorente. While Musick stated that the Flaco with whom he had dealt was one other than defendant Peyro, his credibility on this denial was challenged, and its veracity remained for the jury to decide. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575, 414–15 (1980); *United States v. Robinson,* 756 F.2d 56, 58 (8th Cir.1985). Third, there was substantial testimony that Peyro was Lorente's constant assistant in matters business related.

We believe this evidence was sufficient for the district court to determine by a preponderance of the evidence that the St. Louis and California distribution operations were mere aspects of a larger single conspiracy in which Peyro participated. Thus, evidence from the California seizure was properly admitted against Peyro.

■ We recognize that the display to the jury of 10½ kilograms of cocaine, while not irrelevant, may have been highly prejudicial, and that relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; *see United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980). But such balancing is for the trial court, whose judgment we may upset only for abuse of discretion. *United States v. Lewis,* 759 F.2d 1316, 1336 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985); *United States v. Swarek,* 656 F.2d 331, 337 (8th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981). We cannot conclude that such abuse occurred. Therefore, we reject Peyro's charge that the cocaine seized in California was improperly admitted against him.

### III.

Debra Anton, Musick's girlfriend at the time he distributed cocaine for Lorente in California, served as a government witness, and testified regarding the relationship between Musick and Lorente. In the course of her testimony, Anton conceded that she had "some very substantial memory problems" and was "emotionally unbalanced." Tr. II, 145. She further admitted on cross-examination, with regard to the events she had just recounted to the jury on direct examination: "I don't remember anything very well. There are, like, certain moments I know I remember, but nothing at all specific in any of it." Tr. II, 146. Peyro contends that Anton was incompetent to testify, *see* Fed.R.Evid. 601, and that her personal recollection was seriously flawed, *see* Fed.R.Evid. 602. The trial court's failure to grant his request to strike her testimony, he charges, requires reversal of his conviction.

■ A competency determination, best made with the benefit of firsthand observation of the witness, is a matter of discretion with the trial judge. The appellate court will not interfere except where discretion is abused. *United States v.*

---

**4.** Without question, the display was bound to have enormously influenced the jury. As the trial court commented, "Unless it's part of the same conspiracy, that display, a boxcar full of cocaine, is highly prejudicial." Tr. II, 149. Its admission, therefore, if error, was not harmless. Fed.R.Crim.P. 52(a).

*Stout*, 599 F.2d 866, 869 (8th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979); *United States v. Skillman*, 442 F.2d 542, 560 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). The trial court, upon defendant's objection, personally examined Anton outside the jury's ear, and determined that while she could not recall detail, "she has a broad, general recollection." Tr. II, 162. We have closely reviewed the record and cannot conclude that the trial court abused its discretion in refusing to strike Anton's testimony. In addition, we doubt that the ruling prejudiced Peyro's case, for Anton's recall and emotional problems were laid bare for the jury's consideration.

### IV.

Finally, in closing argument, the prosecutor improperly expressed his opinion that Peyro had lied on the witness stand. Despite warnings from the bench, the prosecutor continued this misconduct.[5] Peyro alleges prejudicial error in the district court's rejection of his motion for mistrial following the prosecutor's statements.

Statements by the prosecutor such as, "The man is an obvious liar," have no place in a criminal trial. Judgment must rest with the jury, not the state. "The prosecutor has no authority to sit as a 'thirteenth juror' and cast a ballot on the issue." *United States v. Splain*, 545 F.2d 1131, 1134 (8th Cir.1976). To the contrary, his special duty as the government's agent is not to convict, but to secure justice. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). We believe the prosecutor failed this duty.

We find this misconduct all the more troubling because it was wholly unnecessary. The evidence of guilt against Peyro was substantial. Indeed, were it less compelling, we would greet Peyro's reversal plea more sympathetically. Reversal, however, is appropriate only when we determine that the jury verdict reasonably could have been affected by the improper comment. *United States v. Lee*, 743 F.2d at 1253; *United States v. Marvin*,

---

5. In response to defense counsel's assertion in closing argument that the government witnesses looked like criminals, government counsel offered the challenged opinion, and a colloquy ensued, as follows:

> GOVERNMENT COUNSEL: Ladies and gentlemen, Mr. Day suggested I take advantage of this opportunity to tell you something with regard to his client that would show his guilt. I don't even have to waste my time with that. You saw this man on the witness stand. You—
> DEFENSE COUNSEL: Your Honor, I object to that. There was nothing he did on the witness stand that would indicate his guilt. He denied his guilt.
> THE COURT: The parties will argue the evidence, please. The jury will recall the evidence. Either side will misstate it at their peril. The government was invited to make a comment. Proceed and argue the evidence.
> GOVERNMENT COUNSEL: The man is an obvious liar. He lied on the witness—
> DEFENSE COUNSEL: Your Honor, I object. I move for a mistrial. That's early [sic] improper argument, contrary to the canons of ethics.

The court did not grant a mistrial but instructed the jury as follows:

> THE COURT: The statement is stricken. Counsel is cautioned against labeling the testimony. The jury will judge the testimony. You may discuss the testimony, but it is beyond the pale of acceptability for any of the attorneys to so name a witness on the stand.
> GOVERNMENT COUNSEL: I think you have reached a judgment as to what he did on that witness stand with regard to his conviction. Nobody has to tell you; you have your own common sense and that's what you are in this box for, to exercise it. You don't have to have anybody tell you whether or not someone is truthful or untruthful. You, as jurors, are the sole judges of credibility.
> Mr. Pupo and Sheila Webb [government witnesses], they did not control the way they were born or what they look like. They are not the most beautiful people in the world, by no sense of the imagination, and they do startle one to see them in the first instance but that does not—
> THE COURT: Pardon me, Mr. Shaw.
> The objection of Mr. Day is a serious objection and the courts have held that a lawyer is subject to discipline by the court if she or he in his or her closing argument either vouches for his own witness or characterizes opposing witnesses as liars.
> The U.S. attorney is admonished in that regard—proceed—for the rest of the case.

Transcript of Excerpted Closing Argument 24–25.

687 F.2d 1221, 1230 (8th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). Here that was not the case, and we therefore must reject Peyro's challenge. Nonetheless, we hasten to caution that a prosecutor who argues a personal view of a defendant's credibility engages in unprofessional conduct, *ABA Standards Relating to the Administration of Criminal Justice,* Standard 3–5.8(b) (1979),[6] that may be subject to sanction. *See Code of Professional Responsibility* DR 7–106(c)(4) (1981).[7]

We affirm the judgment of conviction.

---

**6.** Standard 3–5.8(b) states:

It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

**7.** DR 7–106(c)(4) states:

In appearing in his professional capacity before a tribunal, a lawyer shall not * * * [a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused * * *.