**UNITED STATES of America, Plaintiff,**

**v.**

**Sam F. LONG, Edward E. Quick and E.J. Cantrell, Defendants.**

**No. 90–00116–01/03–CR–W–5.**

United States District Court, W.D. Missouri, W.D.

Dec. 5, 1990.

As Amended Dec. 6, 1990.

Sheryle L. Jeans, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

James R. Wyrsch, Kansas City, Mo., for Long.

Robert Beaird, Kansas City, Mo., for Quick.

F.A. White, Jr., Kansas City, Mo., for Cantrell.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before this Court are the motions of defendants Cantrell and Long for judgment of acquittal, arrest of judgment and new trial. Each of these motions will be addressed individually below. Defendants' motion for arrest of judgment will be denied, defendants' motion for new trial will be denied as moot and defendants' motion for judgment of acquittal will be granted.

### Background

On June 14, 1990, a Grand Jury indictment was filed charging ten counts. Count One charges defendants Long, Quick and Cantrell with conspiracy to commit several offenses under 18 U.S.C. §§ 2314 and 2315 and 29 U.S.C. § 501(c) all in violation of 18 U.S.C. § 371. It alleges that the defendants conspired to obtain money from the International Union of Operating Engineers ("IUOE") in Washington, D.C., for a safety program to be operated under the auspices of Missouri State Building and Construction Trades Council ("MSBCTC). It also alleges that the program was never

implemented and that no measurable work was done toward implementing the program.

Counts Three through Six of the indictment charge all defendants with transportation and receipt of checks moving between the IUOE and the MSBCTC. These funds were for the implementation of the safety program.

Count Seven charges all defendants with embezzling the above-mentioned funds from the MSBCTC.

Count Two charges defendants Long and Cantrell with a separate conspiracy to commit other offenses under 29 U.S.C. § 501(c) and 18 U.S.C. § 2314. It alleges a conspiracy to pay back the IUOE funds which, as a result of an Occupational Safety and Health Administration ("OSHA"), needed to be returned to the IUOE's grant account. Defendants Long and Cantrell allegedly conspired to embezzle funds from Local Union 101 to obtain the funds to be returned to the IUOE.

Count Eight charges defendants Long and Cantrell with embezzling assets consisting of display boards and a carrying case from Local Union 101.

Count Nine charges defendants Long and Cantrell with embezzling $10,000.00 from Local Union 101 for the purpose of transferring that sum to the MSBCTC.

Count Ten charges defendants Long and Cantrell with transporting in interstate commerce a check in the amount of $10,000.00 while knowing the check to be stolen, converted or taken by fraud. This count is based on the transfer of funds from the MSBCTC to the IUOE.

The jury returned a verdict finding defendant Quick not guilty on all counts under which he was charged. The jury found defendants Long and Cantrell not guilty on Counts One, Three, Four, Five, Six, Seven and Eight and guilty on Counts Two, Nine and Ten.

The following evidence was adduced at trial.

Defendant Long, at the pertinent times, was President and Business Manager of Local Union 101. Defendant Cantrell was President of the MSBCTC and a representative to the Missouri legislature. Defendant Quick was a Senator in the Missouri legislature. Local Union 101 is a member of both the IUOE and the MSBCTC.

In early 1985 the Director of Safety and Health for the IUOE, at the direction of the President of the IUOE, discussed with defendant Long the possibility of the IUOE providing funds for a safety program in Missouri. After some further discussions between the defendants and between other parties, the IUOE sent two checks, each in the amount of $5,000.00, to the MSBCTC safety program. The checks were dated December 15, 1985, and February 17, 1986, and were sent to defendant Long.

Defendant Long forwarded the checks to defendants Quick and Cantrell, who opened a checking account under the name of Missouri State Building and Construction Trades Safety Program. Funds from the Safety Program checking account were used to pay the salaries of defendants Quick and Cantrell as director and administrator of the Safety Program.

By April of 1986, the funds provided by the IUOE were all but depleted. No further funding was obtained, and the Safety Program checking account was closed. What little money remained was deposited in a MSBCTC account. Checks totalling the amount deposited were issued to defendants Quick and Cantrell.

Subsequent to these events, OSHA audited the IUOE grant account from which IUOE provided the checks for the MSBCTC safety program. OSHA concluded that these transactions should be disallowed because they were not included as a line item of the IUOE grant.

On being notified of this disallowance, the IUOE Director of Safety and Health called defendant Long and told him that the money would have to be returned. Defendant Long told the IUOE Director that he would see to it that the money was returned.

Defendant Long then called defendant Cantrell and asked that the money be returned to the IUOE. Defendant Cantrell

informed defendant Long that the funds had been depleted. Defendant Long told defendant Cantrell that Local 101 would provide the funds to be returned to the IUOE. Defendant Long then informed the IUOE Director of Safety and Health that the MSBCTC did not have funds to reimburse the $10,000.00 but that he would find a way to provide that money.

Defendant Long then arranged to sell a model crane and assorted display boards and materials to an independent safety consultant, a Mr. Jorgensen. The display boards and a carrying case for the model crane had been purchased with Local Union 101 funds. The model crane and accompanying materials had been put together following a crane collapse in Kansas City, Missouri, in August of 1985.

The model crane was used by defendant Long and others in a successful attempt to persuade OSHA to reverse a determination that the crane had collapsed because of operator error. These materials were later used by defendant Long in a presentation at a safety conference. At the time defendant Long arranged for their sale, they were being stored in various rooms at Local Union 101's offices.

These materials were sold by defendant Long to Mr. Jorgensen for $6,200.00. Defendant Long subsequently sold Mr. Jorgensen additional materials for $3,800.00.

The checks received from Mr. Jorgensen were deposited into a Local Union 101 checking account. On July 21, 1987, defendant Long directed the Local Union 101 bookkeeper to issue a check in the amount of $10,000.00 made payable to the MSBCTC, which she did. The check was then signed by defendant Long and signature stamped with the signature stamp of the Local Union 101 treasurer.

Bundles of Local Union 101 checks were introduced at trial. Many of these checks were signed by defendant Long and signature stamped with the treasurer's name. Similarly, many of the checks were signed by the Local Union 101 treasurer and signature stamped with defendant Long's name. At least one check was signature stamped with both the president's and the treasurer's names.

On July 22, 1987, defendant Cantrell's secretary received the Local Union 101 check and deposited it into the MSBCTC checking account. At the direction of defendant Cantrell, a check in the amount of $10,000.00 was then issued by MSBCTC to the order of the IUOE and sent to the IUOE's offices.

### Motion for Judgment of Acquittal

Defendants Long and Cantrell move for judgment of acquittal on several different grounds. These grounds will be discussed separately below.

### Insufficient Evidence

The standard under which this Court reviews the sufficiency of the evidence in a criminal case has recently been summarized by the Eighth Circuit:

> The defendant's conviction must be upheld if, after viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. In reviewing the guilty verdict, we must give the government the benefit of all inferences that may be reasonably drawn from the evidence. The evidence need not exclude every reasonable hypothesis of innocence, but must simply be sufficient to convince the trier of fact beyond a reasonable doubt that the defendant is guilty. If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb a conviction. Moreover, the ... court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly.

*United States v. Schubel*, 912 F.2d 952, 955 (8th Cir.1990) (citations omitted).

Substantial portions of the parties' briefs are devoted to an analysis of the facts relevant to all of the counts for which the defendants were indicted. As the jury found that each defendant was not guilty on all counts except Counts Two, Nine and Ten, this Court believes it more appropriate to apply the above standard to the evidence

which is material to these latter counts. This is so particularly since it is the government's contention that the counts on which the jury found defendants Long and Cantrell guilty involve a separate and distinct conspiracy.

The crux of defendants' contentions centers on Count Nine of the indictment. In Count Nine, it is charged that defendant Long "did embezzle, steal, and unlawfully and willfully abstract and convert to his own use and the use of others, the sum of $10,000 of the moneys and funds" of Local Union 101, in violation of 29 U.S.C. § 501(c).

Defendants argue, in part, that "lack of authorization" and "lack of benefit to the union" are essential elements to this crime. Because the government did not produce sufficient evidence as to these elements, defendants contend, defendants must be acquitted of this charge. This Court does not agree.

The Eighth Circuit has reviewed at length the issue of whether lack of benefit to the union is an essential element to a charge under § 501(c). *United States v. Goad*, 490 F.2d 1158, 1161–1165 (8th Cir. 1974). It concluded that "[i]f the Government establishes fraudulent intent and lack of proper authorization, it should not also be saddled with an additional burden of proving lack of benefit to the union." *Goad*, 490 F.2d at 1165. This conclusion, however, was not without some qualifications. The *Goad* court narrowed the application of this rule by finding that "lack of union benefit need [not] be established when the funds are *unauthorizedly* expended...." *Id.* (emphasis in original).

This decision explicitly left unanswered whether a union official violates § 501(c) "when the members themselves have authorized union officials to expend union funds for non-union purposes." *Goad*, 490 F.2d at 1166.

Although the Eighth Circuit has not yet found it necessary to answer this latter issue, it has been confronted with a similar question. In *United States v. Welch*, union officials were charged with violations of § 501(c) when they, as members of the union executive board, passed resolutions granting vacation and severance pay to themselves and others in accordance with the union's constitution and by-laws. 728 F.2d 1113, 1117 (8th Cir. 1984).

In discussing the essential elements of a § 501(c) violation, the court found that "[u]nion authorization, however, does not completely insulate defendants from the reach of section 501(c)." *Welch*, 728 F.2d at 1117. The court went on to discuss the tests developed and elements required in other circuits concerning alleged violations of § 501(c). Without explicitly deciding what type of authorization, if any, would be a defense to a § 501(c) charge, the court concluded that "under any test, union officials violate section 501(c) only when they possess fraudulent intent to deprive a union of its funds." *Welch*, 728 F.2d at 1118.

In developing an appropriate verdict directing instruction for Count Eight, this Court concluded that the *Welch* opinion indicated that union authorization was not an essential element to a § 501(c) charge. While the third element in this instruction does say that the jury must find that defendant "Long, without authorization, embezzled, stole, or unlawfully and willfully abstracted or converted to his own use or the use of another, the moneys, funds, property and assets of Local 101," this Court did not mean to indicate that lack of authorization was an essential element. Rather, because the government charged in the indictment and elicited evidence at trial that defendant Long lacked authorization, this Court concluded that such allegation should be part of the instruction.

This Court's reading of *Welch*, that lack of authorization is not an essential element, is similar to interpretations by other circuits. The Fourth Circuit, for example, found that the Eighth Circuit in *Welch* "abandoned the distinction between "authorized" and "unauthorized" expenditures and hold[s] that an expenditure or appropriation violates § 501(c) if the defendant acted with 'fraudulent intent.'" *United States v. Stockton*, 788 F.2d 210, 215 (4th Cir.1986). Similarly, the Seventh Circuit found that *Welch* stands for the proposi-

tion that "authorization (or lack of) for the act is but one factor bearing on intent, as is proof that the union reaped no benefit from the act." *United States v. Floyd*, 882 F.2d 235, 240 (7th Cir.1989).

In reviewing the sufficiency of the evidence, whether or not the Union benefitted from defendant Long's acts and whether or not defendant Long's acts were authorized by the Union are neither one decisive on the issue of whether defendant Long violated § 501(c). Rather the presence or absence of these facts go to the weight of the evidence of fraudulent intent.

*Welch,* in addition to its determination that authorization is not a complete defense to a § 501(c) violation, indicates clearly the fraudulent intent necessary for a conviction under § 501(c):

> Section 501(c) does not hold union officials strictly liable for misuse of union funds. By its very terms, the statute holds union officials criminally liable only when they embezzle, steal, or *unlawfully* and *willfully* abstract or convert to their own use or the use of others the funds of the union. To prove "willfullness" under section 501(c), the government must show that the union officials possessed fraudulent or criminal intent to deprive the union of funds.

*Welch,* 728 F.2d at 1116 (citations omitted; emphasis in original). "Willfullness" under § 501(c), the court explains, "is proved by showing that defendant 'was sufficiently aware of the facts to know that he was acting wrongfully and in contravention of the trust placed in him by the union and its members.'" *Welch,* 728 F.2d at 1116 (quoting *United States v. Belt,* 574 F.2d 1234, 1238 (5th Cir.1978)). As stated in *Goad,* "willfulness" is frequently defined as an " 'act (or omission) ... committed (or omitted) by defendant voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith.'" *Goad,* 490 F.2d at 1166, n. 10.

■ This Court has reviewed the entire transcript of evidence presented at trial. It is undisputed that the $10,000.00 check issued by Local Union 101 was issued for the purpose of reimbursing the IUOE. It is also undisputed that this money was reimbursed to the IUOE at the IUOE's request. Neither defendant Long nor defendant Cantrell received any portion of the money sent to IUOE via the MSBCTC.

The government places great significance on defendants' fiduciary responsibilities and the lack of dissemination to Union members of the particulars of the $10,-000.00 transaction. It also finds the lack of explicit pre-authorization by the Local Union 101 executive board or membership to be a significant indication of fraudulent intent.

This Court cannot agree. The $10,000.00 transaction may not have followed the precise duties language of the constitution and by-laws of Local Union 101, particularly as interpreted by the government. However, the evidence shows that the means of accomplishing this transaction, and the means of recording it in Local Union 101 records, were exactly the same means used for every Local Union 101 financial transaction.

There was no evidence presented that defendant Long attempted to hide, coverup or conceal the means by which he effected a reimbursement to the IUOE from Local Union 101. There was no evidence that the means of accomplishing this transaction were in the least bit unusual.

In isolation, the $10,000.00 transaction on which Count Nine is based may be viewed to imply an ulterior motive in that it did not precisely comply with the procedures prescribed by the Local Union 101 constitution and by-laws. Fraudulent intent, however, must be determined "on the basis of 'all the evidence considered together' and in light of 'all the surrounding circumstances.'" *Welch,* 728 F.2d at 1119 (quoting *Morissette v. United States,* 342 U.S. 246, 275–76, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952). Where, as here, there is no evidence that the means of effecting the complained-of transaction differed from the usual means of effecting transactions, such means cannot be used to infer fraudulent intent.

The government also suggests that the $10,000.00 reimbursement to IUOE implies a fraudulent intent because Local Union 101 had no legal, ethical or moral obligation to make such a reimbursement. While it is true that Local Union 101 had no legal obligation to make the reimbursement, it is also true that no entity other than IUOE had such an obligation. It was the IUOE, after all, that was found to have made the disbursement in contravention to OSHA requirements.

Additionally, this Court cannot agree that Local Union 101 had no ethical or moral obligation to reimburse the IUOE. Local Union 101, through defendant Long, played a role in obtaining the IUOE funds for the Safety Program. It is also a member of the IUOE as well as the MSBCTC. It had at least a moral interest in the reputation and well-being of both organizations.

In sum, there is not sufficient evidence to show that defendant Long possessed fraudulent intent in directing the issuance of a check from Local Union 101 for the reimbursement to the IUOE. Because fraudulent intent is an essential element for a § 501(c) violation, judgment of acquittal must be granted on Count Nine in favor of defendant Long.

■■■■ Additionally, judgment of acquittal must be granted in favor of defendant Cantrell on this Count. Defendant Cantrell is charged with aiding and abetting defendant Long in the commission of a § 501(c) violation. While a defendant may be found guilty of aiding and abetting though the principal is acquitted, *Standefer v. United States*, 447 U.S. 10, 20, 100 S.Ct. 1999, 2006, 64 L.Ed.2d 689 (1980), to be guilty "he must share in the principal's essential criminal intent," *United States v. Lard*, 734 F.2d 1290, 1298 (8th Cir.1984). As there is insufficient evidence to show that defendant Long possessed the requisite fraudulent intent, defendant Cantrell cannot be found guilty either.

Moreover, there is no evidence that defendant Cantrell knew more than that defendant Long was going to attempt to acquire the funds to reimburse the IUOE.

There was no evidence that defendant Cantrell knew the means by which defendant Long would obtain the funds. To be found guilty of aiding and abetting, a defendant must " 'in some sort associate himself with the venture, that he participate in it as something he wishes to bring about, that he seek by his actions to make it succeed.' " *Lard*, 734 F.2d at 1298 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)).

■■■■ As with Count Nine, there is insufficient evidence to support a conviction of either defendant on Count Ten of the indictment. Count Ten charges that the defendants caused the check from the MSBCTC to the IUOE to move across a state line knowing that the check had been stolen, converted or taken by fraud.

The evidence at trial established only that defendant Long sent a check from Local Union 101 to the MSBCTC for the sole purpose of the MSBCTC sending the funds on to the IUOE. This was done so at the direction of defendant Cantrell. Defendant Cantrell knew the purpose of the check from Local Union 101 and accomplished that purpose. That the Local Union 101 check was first deposited in an MSBCTC account does not make those funds the property of the MSBCTC. In fact, had the MSBCTC done anything but reimburse the IUOE with these funds, the MSBCTC itself would have been stealing, converting or taking by fraud those funds.

There was also insufficient evidence to support finding of guilty on the Count Two conspiracy charge.

■■■■ This Court recognizes that a defendant may be found not guilty of the substantive crimes alleged to be the object of the conspiracy while still being found guilty of the conspiracy to commit those crimes. *United States v. Townsley*, 843 F.2d 1070, 1086 (8th Cir.1988). This is so because "[t]he commission of a substantive offense and a conspiracy to commit that offense are two separate and distinct crimes." *United States v. Shigemura*, 682 F.2d 699, 705 (8th Cir.1982).

■ However, "[t]he essence of a conspiracy is an agreement between two or more persons to commit an illegal act." *United States v. Peyro,* 786 F.2d 826 (8th Cir.1986). In the instant case, there simply was no evidence of any such agreement presented at trial.

During the time frame of the conspiracy alleged in Count Two of the indictment, the evidence at trial showed that defendant Long and defendant Cantrell agreed to do but one thing: reimburse the IUOE for the funds it had provided from its grant account. The reimbursement agreement, moreover, was itself very limited. Defendant Cantrell agreed with defendant Long only that if defendant Long sent reimbursement funds to the MSBCTC that defendant Cantrell would then forward those funds on to the IUOE.

Certainly it cannot be said that the reimbursement to the IUOE was an illegal act. Assuming *arguendo* that the *means* by which defendant Long intended to obtain those funds were illegal, there is no evidence from which it can be inferred that defendant Cantrell agreed to or even knew of the means defendant Long would use.

In conclusion, this Court finds that there is insufficient evidence to support the findings of guilty for defendants Long and Cantrell on Counts Two, Nine and Ten of the indictment.

### Multiplicity

■ Defendants argue that the conspiracies alleged in Counts One and Two of the indictment are in fact but one conspiracy. This same argument was made in a pre-trial motion. In ruling on the pre-trial motion, this Court found that the government in the indictment had alleged facts which support a theory of two separate conspiracies. This Court then suggested that, should the facts placed in evidence merit it, the issue of whether there was a single or multiple conspiracies would be submitted to the jury. *See* Order dated August 3, 1990 (citing *United States v. Zimmerman,* 832 F.2d 454, 457–58 (8th Cir.1987)). Whether a single conspiracy or multiple conspiracies exist is a question for the jury. *Zimmerman,* 832 F.2d at 457.

■ At the time counsel and this Court held the jury instruction conference in this case, this Court did not understand counsel for defendants to be requesting that this issue be submitted to the jury. Review of the trial transcripts and defendants' offered jury instructions, however, indicate otherwise. Defendants' instructions 17 and 45 request that the jury be instructed on this factual issue. These instructions were offered by defense counsel during the jury instruction conference held at the close of all the evidence. This Court, however, did not give either of the proposed instructions and did not submit this issue to the jury.

As such, there is a reasonable argument to be made that this Court's failure to submit this issue to the jury constitutes sufficient error to merit a new trial. Given that this Court will grant defendants' motion for judgment of acquittal, however, this motion is moot at this time.

Defendants also argue that Count Two of the indictment itself charges two conspiracies: first, a conspiracy to cover up the acts alleged under the Count One conspiracy and, second, a conspiracy to violate 18 U.S.C. § 2314 and 29 U.S.C. § 501(c).

This Court does not agree. A fair reading of the charge under Count Two is that the indictment alleges a cover-up of the first conspiracy by means of actions which violate these statutes.

For these reasons, this Court cannot grant defendants' motion for judgment of acquittal on the basis of multiplicity.

### Instructions and Indictment

Defendants next argue that the indictment fails to state an essential element of a 29 U.S.C. § 501(c) violation. As argued above, defendants suggest that lack of union authorization is an essential element of the crime charged in Count Nine. As discussed above, this Court does not agree that lack of authorization is an essential element of a § 501(c) violation. Thus, this element need not be pleaded in the indictment.

Defendants next argue that the government constructively amended the indictment by changing its theory of nonauthorization by the executive board of Local Union 101 to nonauthorization by various Union officers. This argument must fall for the reason noted above.

Lastly, defendants argue that the indictment alleges, and the jury instructions instruct, that under Counts Two and Nine defendant Long converted money to his own use. While this Court agrees that there was no evidence of such at trial, the indictment and the instructions state that defendant Long converted money "to his own use and the use of others." This is a proper form of alternate allegations.

For these reasons, defendants' motion for judgment of acquittal on these grounds cannot be granted.

### Motion for Arrest of Judgment

Pursuant to Fed.R.Crim.P. 34, a court "on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." This Court has reviewed defendants' suggestions in support of their motions and finds nowhere an argument for lack of jurisdiction. This Court of its own search of the record finds that it has jurisdiction over the defendants and that the indictment does charge criminal offenses. For this reason, defendants' motion for arrest of judgment will be denied.

### Motion for New Trial

As discussed above, this Court believes that its failure to instruct the jury on the issue of a single conspiracy or multiple conspiracies is sufficient error to merit the grant of a motion for new trial. This Court, however, in granting defendants' motion for judgment of acquittal has rendered this issue moot.

### Conclusion

A review of the record in the instant case reveals that there is insufficient evidence to support the jury's verdicts of guilty on Counts Two, Nine and Ten for defendants

Long and Cantrell. For this reason, it is therefore

ORDERED that defendants' motion for judgment of acquittal is granted. It is further

ORDERED that defendant Sam F. Long is acquitted of the charges in Counts Two, Nine and Ten of the indictment. It is further

ORDERED that defendant Elmer J. Cantrell is acquitted of the charges in Counts Two, Nine and Ten of the indictment. It is further

ORDERED that defendants' motion for arrest of judgment is denied. It is further

ORDERED that defendants' motion for new trial is denied as moot.