999 F.2d 542
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert FRANCO, Petitioner-Appellant,
v.
Eddie R. MYERS, Warden; Attorney General of the State of
California, Respondents-Appellees.
 No. 91-56203.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1992.
Decided July 23, 1993.
 
 Before BEEZER, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Franco was convicted in state court of robbing a grocery store. He petitioned for a writ of habeas corpus, lost, and appeals. He challenges: (1) the district court's finding that the exclusion of the testimony of the driver of the getaway car was harmless, and (2) the district court's finding that any error the trial court made in introducing his un-Mirandized admission that his nickname was "Shady" was harmless.
 
 
 3
 As the police officer prepared the booking report, he asked Franco if he had any nicknames. Franco answered, "Shady," and ultimately that was tied to testimony which tended to identify him as the robber. At the time he was questioned, Franco had not yet been advised of his Miranda rights. The significance of this information was that the getaway driver told the police that her passenger was called "Shadows" or "Steve." In view of the strong testimony of the victim that Franco was the robber, the error if any in admitting the evidence of Franco's statement to the booking officer was harmless beyond a reasonable doubt.
 
 
 4
 The central issue of the trial was the identity of the robber. The grocery store clerk identified Franco as the robber, but the woman who drove the getaway car testified to a memory loss which prevented her from recalling anything about the robber. As Franco argues the case, the state trial judge prevented him from putting on the getaway car driver's testimony that he was not the robber because the judge thought it was too incredible for reasonable jurors to believe. Had that occurred, it would raise a serious constitutional question, because of the centrality of identification in the trial, and the lack of any other exculpatory eyewitness testimony. Franco puts the issue as one of violating the defendant's right to cross-examination, under Delaware v. Van Arsdall[1], 475 U.S. 673 (1986), because he sought to elicit the getaway driver's testimony on cross-examination and was thwarted. He argues that by excluding the testimony, the judge deprived him of his constitutional right to have the jury determine the credibility of the getaway car driver's testimony that he was not the robber. This argument depends on the factual assumption that the getaway driver could so testify.
 
 
 5
 But the getaway driver was not in a position to offer such testimony. At a hearing held outside the presence of the jury, the driver testified that she could not remember the day of the robbery, picking up anyone in her car, getting the money that the robber gave to her, telling police officers about the incident, or anything at all about the robber.
 
 
 6
 Then two police officers testified, still out of the presence of the jury, that she had described the robbery to them in detail and that she had characterized the robber as a "male Mexican, around 25 or 26, about 5'6", short black hair with a dark complexion, and a tatoo of a teardrop under the left eye and once again some sort of block-lettered tattoo on one of the hands and some sort of block letter tattoo on the chest." Given this detailed description followed by her complete lack of memory at trial, it is not surprising that the judge concluded that her professed loss of recollection was contrived.
 
 
 7
 When the jury returned, the getaway driver testified that she remembered that she took part in the robbery but she did not remember anything about the unidentified robber other than that he was a male Mexican. But she was unsure even of this. Then on cross examination, when defense counsel asked the getaway driver if his client was the person in the car with her, the trial judge sustained an objection on the ground of lack of foundation, because she had testified that she would not recognize her passenger or know what he looked like or anything relating to his appearance. Defense counsel was permitted to struggle with her for quite some time, to see whether she could remember enough at least to say that the robber did not look like the defendant, but did not succeed in laying even this much foundation. He asked her, "If I walked in a black man into this courtroom, would you be able to tell if he was the one that was with Tommy Garcia or not?" She answered "No," and explained that she was too "spaced out" at the time from heroin and alcohol to remember.
 
 
 8
 Given the getaway driver's professed lack of any recollection of the events of that day, the trial judge was quite right, under California law, to bar her from testifying as to whether she could identify the defendant as the robber. Under California law, as under the common law and the Federal Rules of Evidence, a witness must have personal knowledge concerning the subject matter of his testimony. Cal.Evid.Code § 702 (West 1990). The getaway driver testified that she did not have such knowledge. Franco was no more entitled to have her say that he was not the robber, than he would be entitled to have that testimony from a witness who testified that she was not there, did not know him, and knew nothing about the robbery.
 
 
 9
 Franco's argument focuses on the materiality of this testimony and on the harm its exclusion worked on Franco's defense[2]. The materiality of the testimony is irrelevant, though, because the witness testified to lack of personal knowledge and ability to recollect the events.[3] Franco claims that the denial of this testimony violates his rights under the Confrontation Clause, but he cites to us no cases holding that one has a Sixth Amendment right to testimony inadmissible for lack of foundation. The purpose of the Confrontation Clause is to ensure the reliability of the fact-finding process. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 3163 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant"). The rule requiring that the witness have personal knowledge of the events to which he is testifying is "[o]ne of the earliest and most pervasive manifestations of the [common law's] ... insistence upon the most reliable information." McCormick on Evidence, § 10. Because she said she could not remember anything, the driver's identification of Franco as "not the robber" was not reliable. The trial judge did not abuse his discretion by barring that testimony. United States v. Payne, 944 F.2d 1458, (9th Cir.1991) (the right to confront witnesses is not unlimited, and the trial judge retains "wide discretion in limiting the scope of cross-examination"), cert. denied 112 S.Ct. 1598 (1992). For purposes of de novo review for constitutional error, the state trial judge did the right thing for the right reason.
 
 
 10
 AFFIRMED.
 
 BEEZER, Circuit Judge, dissenting:
 
 11
 I respectfully dissent. The state trial court's rulings are plainly inconsistent. Either Ligues had personal knowledge or she did not. She cannot have personal knowledge for the prosecution's purposes and not for the defense's.
 
 
 12
 The state trial court, in a pre-trial hearing, determined that Ligues' professed forgetfulness was "contrived" and "phony" and implicitly found that she had personal knowledge of the robber's identity. At trial, the state trial court permitted the prosecution to introduce Ligues' prior statements to the police. These findings are inconsistent with the later exclusion of Ligues' exculpatory testimony that Franco was not the robber on the basis that it lacked foundation.
 
 
 13
 The main subject of the government's questioning of Ligues was the identification of the robber. Defense counsel did not pursue a new line of questions in which, unlike the rest of Ligues' testimony, she had no foundation. If Ligues did not have personal knowledge about the robber's identity, she should not have been allowed to testify on the subject for the defense or the prosecution.
 
 
 14
 Not a single jurist who has reviewed this claim has questioned that the state trial court's ruling was erroneous. The California Court of Appeals determined the state trial court's ruling was erroneous, although the majority concluded the error was harmless. The magistrate determined that an error of constitutional dimension had been made and held that the exclusion of Ligues' testimony was not harmless error. The district court agreed the Constitution was violated but, like the California Court of Appeals, determined the error was harmless.
 
 
 15
 The prosecution all but concedes that the state trial court erred, arguing instead that the error did not violate the Constitution or was harmless. In neither its objection to the magistrate's report nor its brief to this court does the prosecution argue the evidentiary ruling was not erroneous.
 
 
 16
 The majority holds that "the trial judge was quite right, under California law, to bar [Ligues] from testifying as to whether she could identify the defendant as the robber." This court simply does not have the authority to overrule the California Court of Appeals' holding that the state trial judge erred as a matter of state law. The majority declares that "we are not bound" by the state court's finding of error, but I do not understand how that is so. United States v. Vargas, 933 F.2d 701 (9th Cir.1991), does not support this proposition but merely states our standard of review of a district court for matters of law. Id. at 704. Although a federal court can decide that any error at the state level did not rise to the level of a constitutional violation, or was harmless, we may not overrule a state appellate court's decision that there was trial error under state law. Estelle v. McGuire, 112 S.Ct. 475, 480 (1991) (it is "not the province of a federal habeas court to reexamine state court determinations on state law question"); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).
 
 
 17
 Even had the state appellate court not found error, the ruling was erroneous under federal law. The law of this circuit is that "it is the function of the jury, not the court, to determine credibility; that the role of the judge is to determine 'not whether the witness did perceive the matter, but whether a jury or other trier of fact could reasonably believe that the witness perceived it.' " United States v. Owens-El, 889 F.2d 913, 915 (9th Cir.1989) (citation omitted).
 
 
 18
 Here, "a jury or other trier of fact could reasonably believe that [Ligues] perceived" the robber. The state trial court impermissibly invaded the province of the jury in excluding the testimony. "The judge should admit the testimony if the jury could find that the witness perceived the event to which he is testifying." United States v. Owens, 699 F.Supp. 815, 817 (C.D.Cal.1988) (citing 3 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence p 602 at 602-11 (1992)), aff'd, 889 F.2d 913, 915 (9th Cir.1989).[1] There is no doubt that Ligues perceived these events, despite her difficulty in recollection. In United States v. Peyro, 786 F.2d 826 (8th Cir.1986), the Eighth Circuit held that the personal knowledge requirement was satisfied by a witness who admitted she had "some very substantial memory problems," was "emotionally unbalanced," and stated, "I don't remember anything very well. There are ... certain moments I know I remember, but nothing at all specific in any of it." As Professor Morgan stated, "The court may not refuse to permit a witness to testify that he perceived a material matter merely because the court believes the witness to be obviously mistaken or obviously falsifying. It is only when no reasonable trier of fact could believe that the witness perceived what he claims to have perceived that the court may reject the testimony." Morgan, Basic Problems of Evidence 59-60 (1962).
 
 
 19
 The error was of constitutional dimension. The exclusion of this evidence implicated the Confrontation clause, Olden v. Kentucky, 488 U.S. 227, 231 (1988), and the Due Process clause. Chambers v. Mississippi, 410 U.S. 284, 294 (1973); Webb v. Texas, 409 U.S. 95, 98 (1972). It is difficult to imagine a more serious error than excluding testimony of a witness who was in the same car with the robber who says that the defendant was not the robber. It does not matter that the jury may be inclined to discount such testimony as incredible. The "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.... [A]n essential component of procedural fairness is an opportunity to be heard." Crane v. Kentucky, 476 U.S. 683, 690 (1986).
 
 
 20
 The next inquiry is whether the error was harmless. On habeas review, the test is whether the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 61 U.S.L.W. 4335, 4340 (1993). There are two ways of defining the error. Either Ligues should have been allowed to testify for both sides or she should not have been allowed to testify at all. Either way, the error was not harmless.
 
 
 21
 The central issue at trial was the robber's identity. If the state trial court judge found Ligues did have personal knowledge, she should have been allowed to testify about the robber's identity. Franco would surely have been acquitted if the jury believed Ligues' statement: "Franco was not the robber." There was no physical evidence connecting Franco with the robbery. Franco testified that he was innocent and had never seen Ligues before.
 
 
 22
 The prosecution's case was based largely on Ligues' prior statements and the testimony of the cashier Navarro. Ligues' statement that Franco was not the robber would have called the accuracy of her prior statements into question. There were some inconsistencies in Navarro's generally strong testimony. She did not notice that the robber had any tattoos, while Franco has tattoos on his face, hand, and chest. Navarro mistakenly described Franco as being thinner at trial than he had been at the time of the robbery, and stated at one point she was certain the robber's shirt was striped in white while another time indicated she did not remember what color the stripes were. Navarro only had the opportunity to observe the robber for a few minutes.
 
 
 23
 The fact that Franco tried to run away when the police came to arrest him merits little weight, because "flight, at best, is weak evidence of guilt." Gilmore v. Henderson, 825 F.2d 663, 666 (2d Cir.1987). Though Franco's nickname "Shady" sounds similar to "Shadows" or "Steve," which Ligues had stated before trial was the robber's name, this similarity does not conclusively tie Franco to the crime.
 
 
 24
 Had the trial court judge concluded that Ligues had no personal knowledge of the events, Ligues would not have been allowed to take the stand at all. It was essential to the government's case that she do so. Ligues' prior statements provided critical corroboration of Navarro's testimony. Navarro's testimony and the evidence of flight would have been the government's only evidence of Franco's involvement. Either way the case is analyzed, I conclude the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 61 U.S.L.W. at 4340 (1993).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Franco assumes that the Confrontation Clause applies to the testimony of the driver, even if she did not offer any testimony against him, a questionable proposition. See United States v. Andrews, 765 F.2d 1491, 1591 (11th Cir.1985), cert. denied sub nom. Royster v. United States, 474 U.S. 1064 (1986). We do not reach this issue because we dispose of the case on other grounds
 
 
 [2]
 The California Court of Appeal decided that the trial court had erred, but that the error was harmless. We review de novo, for federal constitutional error, so we are not bound by that analysis. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991)
 
 
 [3]
 We respectfully disagree with the suggestion in the dissent that Ligues was treated as having personal knowledge when she testified for the prosecution, but not when she would testify for the defense. She did not testify for the prosecution, except to deny any recollection of what the robber looked like. The prosecutor was no more able to get what he wanted, testimony about the robber's very distinctive appearance, including the tatoos, than defense counsel was permitted to get what he wanted, testimony that the defendant did not look like the robber. Both of them ran up against an empty memory. There is nothing illogical about the proposition that the getaway driver had personal knowledge at an earlier time but not a later time. Not only does memory sometimes fade over time, but also the process of fading might sometimes be accelerated by fear. The getaway driver testified to lack of any foundation for identifying the defendant as the robber or not, and testified to neither substantive proposition. The police testified about her prior statements. The police testimony established that they heard and recalled her prior statements, and the prior statements themselves demonstrated that she at that earlier time had recalled distinctive features of the robber's appearance. She testified at trial that she could not remember making the statements the police attributed to her
 
 
 [1]
 For additional comment, see Weinstein's Evidence at 602-9 ("The judge retains the power to reject the evidence if it could not reasonably be believed--i.e., if as a matter of law no trier of fact could find that the witness actually perceived the matter about which he is testifying."); id. at 602-10 ("In a criminal case where the proponent is the defense, the court should hesitate even more than in other instances in excluding testimony on Rule 602 grounds."); 1 Stephen A. Saltzburg and Michael M. Martin, Federal Rules of Evidence Manual at 529 (5th ed. 1990) ("As long as there is some evidence that the witness has personal knowledge, the trial judge lets the jury decide whether or not the witness is really knowledgeable. If the jury believes that the witness has no personal knowledge, it will disregard the testimony."); id. at 533 ("Whether a witness actually had personal knowledge is a conditional relevance question to be decided by the jury under Rule 104(b) after the judge decides only that there is enough evidence to support a finding that knowledge exists.")