Jakob UNTERREINER,
Plaintiff–Appellant,

v.

VOLKSWAGEN OF AMERICA,
INCORPORATED, Defendant–
Appellee.

No. 92–1921.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 1993.

Decided Nov. 4, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 15, 1993.

Ashley S. Rose (argued), Law Offices of Ashley S. Rose, Wheaton, IL, for plaintiff-appellant.

James S. Whitehead, Linzey D. Jones, Jr., Scott E. Gross (argued), Sidley & Austin, Chicago, IL, for defendant-appellee.

Before FLAUM, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Volkswagen of America, Inc. terminated Jakob Unterreiner from his position as District Service Manager for the company, effective June 30, 1988. Almost one year later, on June 23, 1989, Unterreiner filed a charge with the Illinois Department of Human Rights (IDHR), claiming that he was terminated because of his age. The IDHR cross-filed that charge with the Equal Employment Opportunity Commission (EEOC). Both the IDHR and the EEOC dismissed Unterreiner's claim because he failed to file his charge within the 300–day statutory limitation period. See 29 U.S.C. § 626(d)(2). He then filed suit in district court, contending that his compliance with the limitations period should be excused on equitable grounds. The district court disagreed, judging Unterreiner's claim untimely as a matter of law. Unterreiner appeals and we affirm.

## I. Facts

Volkswagen, a company engaged in the sale and service of automobiles, separates its service enterprise in the United States into territorial regions and subdivides the regions into districts. The Chicago region was subdivided into seven districts. Beginning on April 20, 1981, Unterreiner served as the District Service Manager for one of the districts within the Chicago region. His job required him to visit the several Volkswagen dealerships in his district and to complete reports and other paperwork.

As part of his job, Unterreiner reported to the Chicago region's headquarters located in Lincolnshire, Illinois about once a week. While there, he spent most of his time at the service department which was located on the second floor. The first floor included a common area for all employees, consisting of a cafeteria, a training center, and a conference room. An employees' bulletin board was located next to the entrance of the conference room and immediately across from the entrance to the cafeteria. Volkswagen claims that in 1984 it posted an EEOC notice of employment rights on that bulletin board. According to Volkswagen, that notice set forth the employees' rights under the Age Discrimination in Employment Act (ADEA).

Volkswagen reorganized in late 1987 and reduced from seven to six the number of service districts in the Chicago region. Volkswagen informed Unterreiner on June 13, 1988 that he would be terminated effective June 30, 1988 because of the reorganization. Unterreiner left Volkswagen on that date. He was 52 years old at the time. Sometime around that date he discussed with the Regional Service Manager the possibility of being rehired by Volkswagen in a different job. The Regional Service Manager referred Unterreiner to the Parts Department. In the middle of August 1988, a manager of that department recommended that Unterreiner take a physical examination. Based on the circumstances, Unterreiner believed that he might be rehired. Ultimately, the Parts Department did not hire him, and by September 30, 1988, he concluded that Volkswagen would not rehire him.

On June 23, 1989 Unterreiner mailed a charge to the IDHR alleging that Volkswagen terminated him because of his age. The IDHR received this charge on June 27, 1989, and cross-filed it with the EEOC. The IDHR and the EEOC dismissed the charge because it was filed more than 300 days after June 30, 1988, the date of Unterreiner's termination. Unterreiner then filed a complaint in the district court claiming that Volkswagen violated the ADEA by terminating him. Volkswagen filed a motion for summary judgment, arguing that the statute of limitations barred Unterreiner's claim. Unterreiner responded that Volkswagen's apparent efforts to find him another position within the company and its failure to provide the required notice of his rights under the ADEA provided equitable reasons to escape the statute of limitations. The district court disagreed, and granted summary judgment based on the statute of limitations. Unterreiner then filed this appeal.

## II. Analysis

We review *de novo* the district court's grant of summary judgment. *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir.1992). Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. "In a deferral state such as Illinois, an ADEA plaintiff must file an EEOC charge 'within 300 days after the alleged unlawful practice occurred....'" *Hamilton*, 964 F.2d at 603 (quoting 29 U.S.C. § 626(d)(2)). Unterreiner mailed his charge to the IDHR on June 23, 1989, which was 358 days after the June 30, 1988 date of his termination. He raises two issues on appeal: 1) whether Volkswagen posted notice of employees' rights under the ADEA and 2) whether Volkswagen's alleged efforts to rehire him provided an equitable basis to escape the limitations period. We consider each issue separately.

### A. Notice

█ Under some circumstances, a company's failure to post a notice of employees' rights under the ADEA may toll the statute of limitations. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Unterreiner argues that the record presents factual ques-

tions concerning whether Volkswagen even posted an ADEA notice. Volkswagen emphatically claims that it posted such notice. Volkswagen's Personnel Manager testified in his deposition that he posted an EEOC notice of employees' rights on the employees' bulletin board in January of 1984, and that the notice remained in the upper left-hand corner of the bulletin board at all times during Unterreiner's subsequent employment.

■ In his deposition and in a later filed affidavit, Unterreiner exhibited an almost complete lack of recollection of what was posted on the bulletin board. He testified in his deposition that he remembered seeing some automobile leasing information on the bulletin board, but did not remember any other notices. When asked to explain his lack of memory, he stated that he "didn't look that often" at the bulletin board. In an affidavit executed over one year after his deposition, he affirmed that other than the automobile leasing information, he "does not recall other kinds of notices that may have been posted." He explained that he only walked by the bulletin board four or five times. He also affirmatively stated in his affidavit, however, that there definitely was no ADEA notice posted on the bulletin board. He repeats that statement in his brief. We must decide how to regard this evidence. Specifically, we must decide whether this evidence creates a genuine issue of material fact when compared to the Personnel Manager's unequivocal testimony that he recalls posting an ADEA notice which remained on the upper left-hand corner of the bulletin board during the course of Unterreiner's employment.

Volkswagen initially argues that we should disregard Unterreiner's affidavit because it contradicts his deposition testimony. "A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart." *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988). In his affidavit, Unterreiner affirmatively states that there was no ADEA notice on the board. In his deposition, as well as his affidavit, he indicates that other than some auto-

mobile leasing information, he does not recall what was posted on the bulletin board; he "didn't look at it that often." Are these statements contradictory? They are certainly inconsistent. A party cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject. The statement that there was never an ADEA notice on the board implies that Unterreiner specifically recalls the types of notices on the board. But he stated in his affidavit that other than some automobile leasing information, he did not recall what other kinds of notices might have been posted.

If the statements are not contradictory, the later statement is at least highly unlikely considering the earlier revelations concerning a lack of recall. If the later statement is sufficiently unlikely—to the point of unreliable—then it cannot be used to create a "genuine issue of material fact." In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court clarified the meaning of "genuine issue of material fact." "[T]here is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

A fact-finder could not reasonably infer from Unterreiner's statements, taken as a whole, that the bulletin board had no ADEA notice. The statements are founded upon what Unterreiner admits to be a faulty recollection. The statements are not sufficiently probative. *See Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993) ("self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). Any conflict which Unterreiner manufactures is merely colorable. *See Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989) ("[w]hen it is plain that the plaintiff has no case that could persuade a reasonable jury, the defendant is entitled to summary judgment.") Statements of Volkswagen's Personnel Manager, on the other hand, are unequivocal.

He claims to have posted a notice which remained on the bulletin board at all times during Unterreiner's employment. Unterreiner might have established a "genuine" issue of fact by obtaining the deposition testimony or affidavits of other employees who had a better recollection of the bulletin board. He did not do so, and we are left only with his own statement based on a vague and somewhat conflicting recollection. This does not create a genuine issue of material fact.

In *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.1983), we were asked to determine whether plaintiff's failure to see a posted notice of rights under the ADEA equitably tolled the limitations period. There, the company filed an affidavit in which a company representative recounted that he had conspicuously posted such notice. The plaintiff attempted to create a question of fact by filing an affidavit in which he claimed that he never saw the notice. We determined that the plaintiff failed to create a genuine issue of material fact because an assertion that he never saw the notice "is not the same as an averment that the notice was not in fact conspicuously posted." *Id.* at 106. We held that "[u]nsupported by other evidence, [the plaintiff's] averment that he never saw an ADEA poster at [the company] fails to go far enough to rebut [the company's] unambiguous affidavits." *Id.; accord, Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 412 (7th Cir.1984).

■ The dissent in *Posey* speculated that if the plaintiff (who regularly perused the bulletin board and promptly read new notices) had affirmatively stated that notice was not posted, instead of merely denying knowledge of the poster, the result would have been different. In this case, Unterreiner affirmatively testified that there was no notice posted. But unlike the hypothetical in the *Posey* dissent, Unterreiner's testimony came after he professed ignorance of what was posted on the bulletin board. He claimed he seldom looked at it and remembered only some automobile leasing information. We have determined in this case that at some point a party who discounts his knowledge of a certain subject cannot create a "genuine" issue of fact by contradicting unequivocal testimony about the subject. Unterreiner admits to a lack of recall about what was on the bulletin board. He cannot create a "genuine issue of material fact" by later testifying that there was no ADEA notice on the board.[1]

■ Although Volkswagen does not make this argument, it is possible that a factfinder would not be allowed to hear the kind of testimony contained in the affidavit. *See Palucki*, 879 F.2d at 1572 ("if, as appears likely, the [deponent] would not be permitted to testify [about the matters contained in his deposition], his deposition can hardly be thought to create a genuine issue of material fact—that is, a triable issue."). The threshold criterion for any witness to testify in district court is that he "has personal knowledge of the matter" about which he is testifying. Fed.R.Evid. 602. "Personal knowledge . . . includes . . . inferences from sense data as well as sense data themselves." *Palucki*, 879 F.2d at 1572. In both his deposition and his affidavit, Unterreiner discounts his personal knowledge of what was on the bulletin board. He essentially claims that he had no "sense data" concerning the contents of the bulletin board; he only walked past it a few times and remembered only some car leasing information but no other notices. It would not be an abuse of discretion if a district court deemed a person to be an unworthy witness because he previously manifested an insufficient recollection of events. *See* Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6023 at 204 (1990) ("No witness would be permitted to testify on the strength of having perceived facts or events in the past if the witness admitted to having no present recollection of that perception"). By the same token, we have held that

---

1. Unterreiner also argues that Volkswagen's failure to post more than one notice equitably tolls the limitations period. The Fourth Circuit specifically rejected this argument in *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1353 (4th Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987), and we agree with that decision. Moreover, Unterreiner can hardly claim that the notice was not conspicuous, while at the same time claiming that he walked by the bulletin board where it was posted on four or five occasions.

it was not an abuse of discretion where the district court struck an affidavit because, under a fair reading, it was not based on personal knowledge. *Cf. Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir.1991) ("[t]estimony about matters outside their personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment."); *see also Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1150 (7th Cir.1989) (abuse of discretion is the appropriate standard to review district court's decision to strike an affidavit in granting summary judgment.). The fact that Unterreiner's testimony might not pass the threshold requirements of admissibility at trial provides further support for our conclusion that the testimony is not sufficiently probative to create a genuine issue of material fact.

 The dissent in this case posits that a court cannot resolve factual issues on summary judgment. We agree. But Federal Rule of Civil Procedure 56 empowers a court to make a threshold determination of whether a factual issue is "genuine." This power does not emanate from the court's role as a fact-finder, a role which lays dormant during the summary judgment process. Rather, this power emanates from a court's ability to make an initial assessment of any evidence. A district court exercises its prerogative to assess evidence at trial by determining whether any evidence is admissible. The court is not acting as a fact-finder when it makes such determinations. A district court also exercises its prerogative to assess evidence at the summary judgment stage by determining whether an alleged factual conflict is "genuine." Not every alleged factual conflict creates a "genuine" issue of material fact. As the Supreme Court points out, if the evidence creating the alleged factual conflict "is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Likewise, if the evidence is contradictory or otherwise inconsistent, then it does not create a genuine issue of material fact. *Richardson*, 860 F.2d at 1433. For the reasons we have stated, Unterreiner's state-

ment in his affidavit does not create a genuine issue of material fact.

*B. Equitable principles*

 Besides contending that Volkswagen provided inadequate notice, Unterreiner invokes two other equitable principles—equitable estoppel and equitable tolling—in an attempt to escape the finality of the ADEA limitations period. First, he claims that Volkswagen's "efforts" to rehire him "constitute[ ] a triable issue of material fact" as to whether equitable estoppel applies to interrupt the running of the statute of limitations. In *Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986), we stated that "an 'employee's hope for rehire' or for 'a continuing employment relationship' in any capacity does not necessarily justify the exercise of equitable estoppel." (Quoting *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982).) In *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir.1990), we clarified that "equitable estoppel ... comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." From those two cases a general rule may be synthesized: that a company's attempt to rehire an employee only implies equitable estoppel when the attempt constitutes an effort to prevent the plaintiff from suing in time. The attempt to rehire, standing alone, does not create the inference that the company was trying to prevent the filing of a lawsuit. To raise this inference, a plaintiff must show something more—for instance, an offer to rehire coupled with a request not to file suit. In any event, in this case, just because Volkswagen may have tried to find Unterreiner a job in the Parts Department does not raise the possible inference that Volkswagen was trying to lull Unterreiner into not filing suit.

 Next, Unterreiner claims that Volkswagen's alleged attempts to rehire him equitably tolled the statute of limitations. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his

claim." *Cada*, 920 F.2d at 451. We fail to see how Volkswagen's alleged attempts to find Unterreiner a new position with the company detracted from his ability to "discover essential information bearing on his claim." *Id.* at 452. Perhaps Unterreiner is arguing that Volkswagen's enticement of continued employment reduced the diligence with which he pursued his claim. But that is really an equitable estoppel argument, bearing on Volkswagen's behavior in causing his forbearance. We have warned against fusing the doctrines of equitable estoppel and equitable tolling in ADEA claims. *Id.*

■ Even if we assume, for the sake of argument, that Volkswagen's alleged enticement of continued employment somehow tolled the statute of limitations until September 30, 1988, the day Unterreiner allegedly discovered there was no job for him, this would not save his claim. Equitable tolling does not "bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term." *Id.* In *Cada*, we refused to extend the statute of limitations when the plaintiff reasonably should have discovered his injury several months before the running of the statute. We held that "a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." *Id.* at 453.

■ In this case, Unterreiner presents one obstacle to his ability to obtain the necessary information—Volkswagen's alleged enticement of continued employment. Unterreiner admits that this obstacle was removed by September 30, 1988. At that time he still had several months to file his claim but he failed to do so. Under our decision in *Cada*, the doctrine of equitable tolling does not allow us to exclude the time the statute allegedly was tolled from the ultimate calculation of the statute of limitations, at least when the plaintiff still had sufficient time after the tolled period to file suit. Unterreiner had sufficient time, and therefore equitable tolling does not save his claim.

## C. Notice Revisited

In *Kephart,* we established that a company's failure to post an ADEA notice equitably tolls the statute of limitations, and "the [statute of limitations] will begin to run when the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." 581 F.2d at 1289. But in *Cada*, we determined that equitable tolling does not "bring about an automatic extension of the statute of limitations by the length of the tolling period." 920 F.2d at 452. At oral argument, Unterreiner admitted that he knew of his claim by September 30, 1988; he argued that the clock should have started to run on that date. It might be argued, in light of *Cada*, that regardless of whether Volkswagen posted notice, Unterreiner was required to file his claim during the original statutory period—because we no longer exclude the time the statute is equitably tolled. But Volkswagen does not raise this argument and we do not resolve it. Therefore, it remains unsettled whether our decision in *Cada* eliminates the automatic extension to the statute of limitations established in *Kephart.*

## III. Conclusion

Unterreiner cannot escape the 300-day statute of limitations for filing his age discrimination claim under any equitable principles, and therefore the summary judgment of the district court is

Affirmed.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting.

Appellate judges are not factfinders. *United States v. Rodriguez*, 888 F.2d 519, 525 (7th Cir.1989) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986)). My colleagues today have nonetheless assumed that role and declared Unterreiner the loser of what essentially is a swearing match, his memory too flawed in their estimation to merit credence. I must respectfully dissent because the majority's decision denies Unterreiner the reasonable inferences to which he is entitled on a motion for summary judgment and because I believe it sows confusion

as to the personal knowledge requirement of Fed.R.Evid. 602.[1]

A plaintiff's failure to file an EEOC charge within 300 days of his termination may be excused if he can show that his employer failed to post (and keep posted) a conspicuous notice of his rights under the ADEA. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). When the employer attests that it posted the requisite notice, however, the plaintiff's averment that he did not see or does not recall reading the notice will not suffice to avoid summary judgment, because it "is not the same as an averment that the notice was not in fact conspicuously posted." *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *accord Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 412 (7th Cir.1984). I share Judge Cudahy's doubts about whether *Posey* was correctly decided. *See Posey*, 702 F.2d at 106–07 (Cudahy, J., dissenting). Hearsay aside, an individual can only recount what he *recalls*, and he can only recall what he has *seen*. Thus, when Posey stated that he had frequently looked at his employer's bulletin board and that "he never saw and does not recall ever reading [an ADEA notice]," 702 F.2d at 105, I would have thought that enough to create an issue of fact as to whether his employer had posted such a notice. *See Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991) ("Perhaps, as suggested by the dissent in *Posey*, the court did not give Posey the benefit of reasonable inferences, as it should have."); *Poff v. General Elec. Co.*, No. 89–3320, 1990 WL 18911 *2–3, 1990 U.S.Dist. LEXIS 2043, at *7–8 (E.D.Pa. Feb. 27, 1990).

Nonetheless, accepting *Posey* as the law of the circuit, I believe the majority takes an unwarranted step beyond *Posey* today, for unlike Posey, Unterreiner did not merely state that he "could not recall reading" an EEOC notice on the bulletin board at Volkswagen's Lincolnshire facility. Instead, Unterreiner asserted unequivocally that on the four or five occasions he looked at the board, no notice was posted. Unterreiner Aff. ¶¶ 15, 16, 22. In my view, this was enough to satisfy *Posey*. Unterreiner was in no position to challenge more directly the Personnel Manager's assertion that he posted an EEOC notice in 1984 (Wulfram Aff. ¶ 8), because only that individual knows first-hand whether he actually did so. Instead, Unterreiner—like any other employee—could say only whether, on the occasions he looked at the bulletin board, such a notice was present. Unterreiner said not, without qualification. Another employee (who visited the facility less often than Unterreiner) asserted that he did see a notice posted on the board. Penzkofer Aff. ¶ 5. That creates a tie for summary judgment purposes, and as on the diamond, a tie goes to the runner—here, Unterreiner. Perhaps Unterreiner could have recruited other employees to offer affidavits confirming his own recollection of things, but that would only have affected the quantity of the evidence on his side, not the quality. The number of witnesses for each party is not dispositive at trial, let alone on summary judgment. *See* 1 Federal Criminal Jury Instructions for the Seventh Circuit 3.28 (1980); 3 Edward J. Devitt, Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions (Civil)* § 73.01, at 50 (1987).

The majority circumvents the manifest conflict between the affidavits only by discounting Unterreiner's affidavit as contradictory and incredible. In particular, the majority finds the affidavit inconsistent with Unterreiner's deposition testimony. But the central assertion of Unterreiner's affidavit—that no EEOC notice was posted when he looked at the bulletin board—does not contradict anything in his deposition. Indeed, strikingly absent from the deposition is *any inquiry whatsoever* into whether or not Unterreiner recalled seeing an EEOC notice.[2]

---

1. I have no quarrel with the majority's resolution of the equitable estoppel and equitable tolling issues. Op. at 1212–1213. My disagreement is limited to the question of notice, on which I believe Unterreiner was entitled to a trial.

2. The record on appeal does not include a complete copy of the deposition transcript, but the portions included make no mention of the EEOC notice, and at oral argument, Volkswagen's counsel conceded that Unterreiner was not asked whether he ever saw an EEOC notice.

Instead, Volkswagen's counsel asked Unterreiner only whether he could recall seeing four types of notices: job postings, marriage announcements, retirement notices, and car leasing opportunities. Unterreiner Dep. at 148, 342–43. Unterreiner did recall seeing a car leasing notice once, but not any of the other three notices. *Id.* at 342–43. The inquiry ended with this exchange:

Q: Do you recall anything else on that bulletin board that you might have seen?

A: No, I don't.

Q: So you said you don't really remember what was posted on that bulletin board?

A: I didn't look at it that often.

*Id.* at 343. Unterreiner's final answer is not explicitly a "yes" or a "no," but in light of his answer to the previous question, I grant that it may be construed as a "no."

But Unterreiner's concession that he was unable to remember what *was* on the board does not render his subsequent affidavit contradictory. Indeed, Unterreiner's affidavit candidly repeats that but for one or more notices regarding automobile leasing or sales, "he does not recall other kinds of notices that may have been posted." Unterreiner Aff. ¶ 15. What Unterreiner adds is that having seen a copy of the EEOC notice that Volkswagen claims to have posted on the bulletin board, he knows that such a notice was not posted on the occasions he looked at the board. *Id.* ¶¶ 16, 22. This assertion certainly is not precluded by his deposition testimony, given that Volkswagen never asked Unterreiner about his ability to recall seeing an EEOC notice. Moreover, given the imperfections of human memory, Unterreiner could conceivably recall *not* seeing a particular kind of notice without being able to remember what notices he *did* see. A jury might find this disparity suspect, but it is not so far-fetched that we may simply rule it out as a matter of law. *See Tippens v. Celotex*

*Corp.,* 805 F.2d 949, 954–55 (11th Cir.1986).[3] I must also point out that the record before us contains absolutely no evidence regarding the notices that Unterreiner could not recall; consequently, we do not know whether Unterreiner's inability to remember them is explained by a fault in his memory or the possibility that no such notices were posted on the occasions he viewed the bulletin board.

The majority has therefore denied Unterreiner's affidavit the credence it is due on summary judgment. The fact that Unterreiner does not recall other notices does not render his memory as to the EEOC notice inherently untrustworthy. We have before us only the transcript of a deposition in which Unterreiner's recollection of the EEOC notice was never explored and conflicting affidavits that are equally self-serving. We should not be deciding who is telling the truth on this cold record. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "[S]ummary judgment is not a procedure for resolving a swearing contest." *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992); *see also Cameron v. Frances Slocum Bank & Trust Co.,* 824 F.2d 570, 575 (7th Cir.1987) ("On summary judgment, a court can neither make a choice between competing inferences nor make a credibility determination.")

The majority also suggests that Unterreiner's affidavit may not meet the personal knowledge requirement of Fed.R.Evid. 602, because Unterreiner "only walked past [the bulletin board] a few times and remembered only some car leasing information but no other notices." Op. at 1211. That dictum misapprehends the rule. Rule 602 reflects the axiom that a witness may testify only to matters within his personal knowledge. *See Visser v. Packer Eng'g Assocs., Inc.,* 924

---

3. Many employees might be unable to recall whether there were "for sale" or marriage announcements posted on the cafeteria bulletin board. However, if shown a copy of a sufficiently distinctive notice and asked whether that notice was posted, they are more likely to give a definitive answer. An EEOC notice is relatively distinctive: a recent picture of the bulletin board at Volkswagen's Lincolnshire facility reveals it to be the largest notice on the board, and the notice bears a caption admonishing that "Equal Employment Opportunity is ... THE LAW" in lettering that occupies the top third of the poster. Wulfram Aff. Exs. D, E; *see also Edgeworth v. Fort Howard Paper Co.,* 673 F.Supp. 922, 927 (N.D.Ill.1987) (reprinting notice in reduced form).

F.2d 655, 659 (7th Cir.1991) (en banc). This of course includes what the witness has seen. 3 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 260, at 39 (1979). Unterreiner's affidavit carefully recites the number and circumstances of the occasions on which he viewed the bulletin board, confirms that he knows what an EEOC notice looks like, and states without qualification that saw no such notice on the board. Unterreiner Aff. ¶¶ 12–16, 22. The affidavit thus includes specific facts from which we may conclude that Unterreiner has the personal knowledge that Rule 602 requires. *See Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988).[4] The fact that Unterreiner's memory is not exhaustive does not render him incompetent to testify about what he does remember. *See O'Shea v. Jewel Tea Co.*, 233 F.2d 530, 534 (7th Cir.1956); *United States v. Peyro*, 786 F.2d 826, 830–31 (8th Cir.1986). *See also United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir.) ("The result of a witness's observations need not be positive or absolutely certain to make his testimony admissible, and lack of certainty is a matter to be argued to the jury rather than a reason for excluding the evidence.") (citations omitted), *cert. denied*, —— U.S. ——, ——, ——, 113 S.Ct. 139, 140, 663, 121 L.Ed.2d 92, 92, 588 (1992).

Rule 602 may come into play if the witness remembers *nothing*, as the majority points out. Op. at 1211. But the very authority that the majority cites for this proposition acknowledges the distinction between a faulty memory and none at all:

> While present recollection is a necessary component of personal knowledge, there is no reason why witness memory must be any more certain or complete than perception. Thus, memory gaps and doubts caused by the lapse of time go to the weight to be given the testimony. So long as the witness has some recollection, a jury could reasonably give the testimony some weight and this aspect of the personal knowledge requirement is satisfied. If, however, the witness may have based testimony on hearsay or fantasy rather than

recalled matters based on perception, a personal knowledge problem exists.

> 27 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6023, at 205–06 (1990) (footnotes omitted). Unterreiner's memory may have been incomplete, but it cannot be described as blank.

By effectively importing a "keen memory" requirement into Rule 602, the majority has transformed questions of credibility into questions of admissibility. Professors Wright and Gold have aptly identified the concerns which counsel against such a construction of the rule:

> First is a concern for the probative value of evidence that might be lost to a more demanding personal knowledge requirement. Given the deficiencies of human perception and memory, it would be a rare witness who could truthfully testify without admitting to some significant problem concerning perception or recollection. Second, given the pervasiveness of perception and memory problems, a more demanding personal knowledge requirement could cause significant expense and delay in the conduct of trials. The testimony of each witness would be interrupted more frequently by objections and multiple witnesses might have to testify to establish matters now proven to a tolerable degree of reliability by the testimony of a single witness. Third, and most important, Rules 601 and 602 reveal an inclination to classify problems concerning the reliability of testimony as issues of witness credibility. Those rules further reflect the belief that questions concerning the credibility of witnesses should be decided by the jury and[ ] not the judge. Implicit in this belief is a rejection of the common law's assumption that juries cannot accurately evaluate the credibility of certain witnesses and inevitably would be led away from the truth by their testimony.

Wright & Gold § 6022, at 195–96 (footnotes omitted). These concerns are, of course, all the more weighty on summary judgment,

---

4. If any affidavit is deficient in this respect, it is that of Volkswagen's Mid–West Zone Service Manager, who baldly asserted that a notice was posted (Lang Aff. ¶ 5) without offering any facts confirming that this was a matter within his personal knowledge. *See Davis*, 841 F.2d at 189.

when a judge has not had occasion to assess the witnesses' credibility first hand.

As in *Posey*, the majority today offers employees little guidance as to how they might survive summary judgment on the question of notice. Instead, the court's decision will encourage litigants to wage credibility battles on summary judgment and to invoke Rule 602 against any witness whose mind is not a steel trap. Neither Fed. R.Civ.P. 56 nor Fed.R.Evid. 602 were intended as vehicles for summary judgment by impeachment. We may think that Unterreiner's recollection is selective, unreliable, or even fabricated, and a jury might agree.[5] But a jury would render such an assessment having looked Unterreiner and the other witnesses in the eye—something no judge or jury has had the opportunity to do here.

---

**5.** The ADEA provides that "a person shall be entitled to a trial by jury of any issue of fact" in an age discrimination action. 29 U.S.C. § 626(c)(2).