Adonis HARDIN, Plaintiff,

v.

CNA INSURANCE COMPANIES,
Defendant.

No. IP 99–0014–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 4, 1999.

John H Haskin, Haskin Lauter Cohen &
Larue, Indianapolis, IN, for plaintiff.

Jeffrey S Goldman, Fox and Grove
Chartered, Chicago, IL, Robert L
McLaughlin, Wooden & McLaughlin, In-
dianapolis, IN, for defendant.

## ENTRY GRANTING DEFENDANT'S MOTION TO DISMISS COUNT I OF THE COMPLAINT

BARKER, Chief Judge.

Plaintiff, Adonis Hardin ("Hardin"), filed
a Complaint on January 6, 1999 alleging
that she was the victim of unlawful em-
ployment practices including race and sex
discrimination under Title VII, 42 U.S.C.
§ 2000e *et seq.* and 42 U.S.C. § 1981(a);
and the Equal Pay Act 29 U.S.C. § 206(d)
*et seq.* perpetrated by the Defendant, Con-
tinental Casualty Company ("CNA").[1]
Count I of the Complaint asserts a claim
for discrimination arising under § 1981.
Pursuant to Federal Rule of Civil Proce-
dure 12(b)(6), CNA has moved to dismiss
Count I for failure to state a claim upon
which relief can be granted. For the rea-

1. Defendant is erroneously designated in the    case-caption as CNA Insurance Companies.

sons discussed below, CNA's motion is *GRANTED.*

### Factual Background

Hardin was hired by CNA's predecessor on or about March 27, 1978. *See* Compl. ¶ 8. During the course of her employment, Hardin asserts that she was paid less than similarly situated white male employees. *See id.* ¶ 9. In January 1996, Hardin sought a promotion from her position of Systems Support Analyst II (SSA II) to the position of Systems Support Analyst III (SSA III). *See id.* ¶ 10. Hardin alleges that she was already performing the duties of a SSA III and was merely seeking compensation commensurate with those duties. *See id.* Hardin's manager notified her in August or September 1996 that her request for promotion had been denied. *See id.* ¶ 11.

In November 1996, Hardin informed her manager that she was interested in applying for the positions of customer service manager and operations manager. *See id.* ¶ 13. After Hardin interviewed for the operations manager position, CNA promoted Guy Mower, a white male. *See id.* ¶¶ 14–15. On or about January 2, 1997, CNA informed Hardin that she could not interview for the customer service manager position. *See id.* ¶ 16. Several weeks later, CNA hired two white people for the customer service manager positions who were allegedly less qualified than Hardin. *See id.* ¶¶ 16, 19. As a result of these events, Hardin timely filed a charge with the Equal Employment Opportunity Commission and filed her complaint in this action on January 6, 1999.

### Discussion

### A.  Standard of Review.

On a motion to dismiss brought pursuant to Rule 12(b)(6), we must determine whether the plaintiff's complaint states a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). We may only grant this motion if it is clear that no relief is appropriate under any set of facts consistent with the allegations of the com-

plaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir.1996). We do not review the merits of the lawsuit, *see Triad Associates. v. Chicago Hous. Auth.,* 892 F.2d 583, 585 (7th Cir.1989); rather, the motion to dismiss may only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Thus, "in order to resist a motion to dismiss, the complaint must at least set out facts sufficient to 'outline or adumbrate' the basis of the claim." *Panaras v. Liquid Carbonic Indus., Corp.,* 74 F.3d 786, 792 (7th Cir.1996).

CNA argues that Count I of Hardin's Complaint, which purports to set out a claim under § 1981, must be dismissed because it fails to state a claim upon which relief may be granted based on the expiration of the statute of limitations and the absence of any contractual relationship between Hardin and CNA. Hardin responds that the claim is not barred by the statute of limitations because the appropriate limitations period as provided in 28 U.S.C. § 1658 is four years, or alternatively, even if the statute of limitations is two years under Indiana statute and adopted by federal decisions, the complaint was still timely filed. Hardin also contends that the complaint states a sufficient contractual relationship to support a § 1981 claim.

### B.  Statute Of Limitations.

### 1.  Application of 28 U.S.C. § 1658 to § 1981 claims.

Before determining whether Hardin's § 1981 claim is barred by the statute of limitations, we first inquire as to the appropriate limitations period applicable to a § 1981 claim. The long-standing and well-settled rule is that the statute of limitations for claims arising under § 1981 is borrowed from the relevant state law. *See*

*Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Runyon v. McCrary,* 427 U.S. 160, 179–82, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 807–08 (7th Cir.1999). Since 1987, courts faced with claims arising under § 1981 have borrowed the forum state's personal injury limitations period. *See Goodman,* 482 U.S. at 661, 107 S.Ct. 2617; *Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir. 1994); *Smith v. City of Chicago Heights,* 951 F.2d 834, 836 n. 1 (7th Cir.1992).[2] For § 1981 claims arising in Indiana, courts have applied Indiana's two-year statute of limitations applicable to personal injury actions. *See, e.g., Jones,* 42 F.3d at 1058 (applying Ind.Code. § 34-1-2-2); *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1163 (7th Cir.1994) (same); *Coopwood v. Lake County Community Dev. Dep't,* 932 F.2d 677, 678–79 (7th Cir.1991) (same); *Smith v. CB Commercial Real Estate Group, Inc.,* 947 F.Supp. 1282, 1283 (S.D.Ind.1996) (same).[3]

■ Despite these familiar holdings, Hardin asserts that Indiana's two-year statute of limitations should give way to the four-year limitations period found in 28

U.S.C. § 1658. Our research discloses no Seventh Circuit case to adopt this approach; the only other district court in our circuit faced with this issue failed to reach it. *See Jones v. R.R. Donnelly & Sons,* 1999 WL 639180, at *2 n. 4 (N.D.Ill. Aug.17, 1999); *cf. MCI Telecomms. Corp. v. Illinois Bell Tel. Co.,* No. 97-C-2225, 1998 WL 156674, at *4-*5 (N.D.Ill. Mar.31, 1998) (applying § 1658 to plaintiffs' claims arising under the Telecommunications Act of 1996). Indeed, review of caselaw from other circuit courts has located no decisions addressing the applicability of § 1658 to claims arising under § 1981, and only twelve district courts have dealt with the issue, a majority of which oppose Plaintiff's theory.[4] After carefully considering the contentions of the parties and the holdings by other courts in similar cases, we adopt the majority view that § 1658 does not apply to claims arising under § 1981, even after the adoption of amendments to that statute in the Civil Rights Act of 1991. The appropriate limitations period for Hardin's claim thus remains at two years as provided by Indiana statute.

On December 1, 1990, Congress enacted 28 U.S.C. § 1658 providing that "[e]xcept as otherwise provided by law, *a civil ac-*

**2.** *Goodman's* ruling brought the statute of limitations for § 1981 claims in line with the limitations period borrowed for claims arising under 42 U.S.C. § 1983. *See Goodman,* 482 U.S. at 661, 107 S.Ct. 2617 (discussing *Wilson v. Garcia,* 471 U.S. 261, 266–68, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that courts should borrow state's personal injury statute of limitations for § 1983 claims)).

**3.** In 1998, Indiana repealed Articles One through Five of Title 34 in favor of specific statutes of limitations. *See* Ind.Code §§ 34-11-2-1—34-11-2-12. Despite the new codification, the statute of limitations for injuries to the person remains two years under Indiana law. *See* § 34-11-2-4.

**4.** *Compare Williams v. Home Depot, U.S.A., Inc.,* No. 98-CV-3712, 1999 WL 788597, at *4 (E.D.Pa. Oct.5, 1999) (holding § 1658 inapplicable to claims arising under § 1981), *In re Zubi v. AT & T Corp.,* No. 98-3424, 1999 WL 334916, *3 (D.N.J. Apr. 6, 1999) (same), *Lasley v. Hershey Foods Corp.,* 35 F.Supp.2d 1319, 1322 (D.Kan.1999) (same), *Lane v. Og-*

*den Entertainment, Inc.,* 13 F.Supp.2d 1261, 1270 (M.D.Ala.1998) (same), *Mason v. Anadarko Petroleum Corp.,* No. 97-1051-WEB, 1998 WL 166562, at *4 (D.Kan. Mar.2, 1998) (same), *Jackson v. Motel 6 Multipurposes, Inc.,* Nos. 96-72-CIV-FTM-17D, 96-115-CIV-FTM-17D, 1997 WL 724429, at *2 (M.D.Fla. Nov.6, 1997) (same), *Chawla v. Emory Univ.,* No. 1:95CV0750JOF, 1997 WL 907570, at *14 (N.D.Ga. Feb.13, 1997) (same), *and Davis v. State of Cal. Dept. of Corrections,* No. S-93-1307DFLGGH, 1996 WL 271001, at *18 (E.D.Cal. Feb.23, 1996) (same), *with Miller v. Federal Express Corp.,* 56 F.Supp.2d 955, 965 (W.D.Tenn.1999) (holding § 1658 applies to claims arising under § 1981, as amended by the Civil Rights Act of 1991), *Rodgers v. Apple South, Inc.,* 35 F.Supp.2d 974, 977 (W.D.Ky. 1999) (same), *Stewart v. Coors Brewing Co.,* No. 97-B-1467, 1998 WL 880462, at *4-*5 (D.Colo. Dec.14, 1998) (same), *and Alexander v. Precision Machining, Inc.,* 990 F.Supp. 1304, 1308 (D.Kan.1997) (same).

tion arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action arises." § 1658 (emphasis added). The language emphasized above could be read to apply to any congressional action, including amendments to previously existing statutes. Our examination of the legislative history of § 1658 indicates, however, such an interpretation is too broad. In enacting this new statute of limitations, Congress was addressing the then existing, and still current, practice by federal courts of borrowing state statutes of limitations for federal causes of action. See H.R.Rep. No. 101–734, at 24 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6870. Despite these legislative concerns, § 1658 was not intended to apply to all subsequently enacted statutes; rather § 1658 was to address this problem by creating a four year, "fall-back statute of limitations, applicable to legislation enacted after the effective date of this Act, which creates a cause of action but is silent as to the applicable limitations period." Id. (emphasis added). We conclude, therefore, that the four-year limitation period, applies only to "claims-creating statutes." David Siegel, Practice Commentary to 28 U.S.C.A. § 1658 at 240 (1994). Accordingly, the courts addressing § 1658's applicability to § 1981 must focus on whether the Civil Rights Act of 1991, which effected certain changes to § 1981, was in that respect a "claim-creating" statute.

### 2. The impact of the Civil Rights Act of 1991 on § 1981.

As amended by the 1991 amendments, § 1981 contains three subsections: subsection (a) incorporates the original § 1981 language; subsection (b), a new provision, defines the term "make and enforce contracts" set out in § 1981(a) to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship;" subsection (c) was added to ensure that the protection of rights found in § 1981(a)

extends to private, as well as public contracting. The essential guarantees of § 1981(a) therefore have been clarified but in their essential terms remain unchanged by the 1991 amendments. These protections have existed since § 1981's original enactment in 1866, and provide the basis for plaintiffs' § 1981 claims. The two new subsections added to § 1981—respectively, paragraphs (b) and (c)—merely define terms to rectify confusions that had arisen under caselaw and provide an enforcement mechanism for § 1981(a)'s protections. Accordingly, we conclude that § 1658 should not apply to claims arising under § 1981.

This conclusion is supported by a review of the legislative history surrounding the adoption of the Civil Rights Act of 1991. At several points in the reports of Public Law 102–166, references are made to the statute of limitations for § 1981 claims. See H.R.Rep. No. 102–40(I), at 63 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 601; H.R.Rep. No. 102–40(II), at 22 n. 32 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 716. Congress noted that "courts look to state statues [sic] of limitation which typically allow two to three years ... to file." H.R.Rep. No. 102–40(II) at 22 n. 32, 1991 U.S.C.C.A.N. at 716; see also H.R.Rep. No. 102–40(I) at 63, 1991 U.S.C.C.A.N. at 601 (stating that "courts applying [§ 1981] have looked to analogous state statutes of limitations."). These comments were made in the context of discussions relating to the need to extend the statute of limitations for Title VII claims from 180 days to two years. See H.R.Rep. No. 102–40(II) at 22–23, 1991 U.S.C.C.A.N. at 715–16, H.R.Rep. No. 102–40(I) at 63–64, 1991 U.S.C.C.A.N. at 601–02. Title VII's statute of limitations was in fact extended to two years to "bring it more closely in line with the limitations period allowed by section 1981 and other comparable federal and state statutes." H.R.Rep. No. 102–40(I) at 64, 1991 U.S.C.C.A.N. at 601; see also H.R.Rep. No. 102–40(II) at 22, 1991 U.S.C.C.A.N. at 715–16 (discussing need to extend Title

VII statute of limitations period to two years to bring it "into harmony with the longer statute of limitations found in 42 U.S.C. § 1981"). Clearly, had Congress intended the uniform four-year statute of limitations period which was provided for in § 1658 to apply to § 1981 claims it would have and could have so stated. *See Williams,* 1999 WL 788597, at *4, *Lasley,* 35 F.Supp.2d at 1321–22.

More compelling still are the reports' discussions of the reasons that § 1981 was being amended. Congress clearly did not view the Civil Rights Act of 1991 as creating new causes of action in the form of or under the guise of § 1981; rather their deliberations reveal an intent to *restore* the proper scope to the already existing § 1981 cause of action. Section 210 of the Civil Rights Act of 1991 is titled *"Restoring* the Prohibition Against all Racial Discrimination in the Making and Enforcement of Contracts," H.R.Rep. No. 102–40(I) at 89, 1991 U.S.C.C.A.N. at 627 (emphasis added), and was enacted as a direct reaction to the Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson,* the Court held that § 1981's protections, as they were then defined, did not extend to "conduct by the employer after the contract relation has been established." *Id.* at 177, 109 S.Ct. 2363.

> Congress specifically noted that
>
> [t]he *Patterson* decision sharply cut back on the scope and effectiveness of section 1981, shattering the uniform consensus the federal courts had reached

on the scope of the statute. Prior to the *Patterson* ruling, every federal court of appeals had held that section 1981 prohibits not just discrimination at the formation of an employment contract, but discrimination during the performance of that contract as well.

H.R.Rep. No. 102–40(I) at 90, 1991 U.S.C.C.A.N. at 628 (collecting cases which had previously held that § 1981 extended to post-formation conduct). Moreover, in discussing the background of the Civil Rights Act of 1991, Congress noted that

> [s]ection 12 of the Act amends Section 1981 to *reaffirm* that the right 'to make and enforce contracts' includes the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. By *restoring the broad scope of Section 1981,* Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race.

H.R.Rep. No. 102–40(II) at 2, 1991 U.S.C.C.A.N. at 694–95 (emphasis added). We conclude from these excerpts that Congress did not regard or otherwise treat the Civil Rights Act of 1991 as a "claim-creating statute" with respect to § 1981.[5] Since the Civil Rights Act of 1991 is not a "claim-creating" statute, the four-year statute of limitations period found in § 1658 does not apply to claims arising under § 1981.[6]

Despite our confidence in this holding, other district courts, in *Miller, Rodgers, Stewart,* and *Alexander,* have applied the

---

**5.** Since only the amendments' impact on § 1981 is before us, we take no position regarding whether the 1991 amendments were "claim creating" in regard to any other cause of action.

**6.** Plaintiff spends a portion of her brief attempting to corrolate the application of § 1658 to claims arising under § 1981 and decisions by courts that hold that the amendments of the Civil Rights Act of 1991 are not to be applied retroactively. *See* Pl.'s Opposition to Def.'s Mot. to Dismiss Count I of the Compl. ("Pl.'s Opp'n") at 14–18; *see also Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225 (7th Cir.1992) (holding that the Civil

Rights Act of 1991 should not be applied retroactively), *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (7th Cir.1992) (same). However, holding that the Civil Rights Act of 1991 *formulation of what constitutes a § 1981 cause of action* should not be applied retroactively is not the same as saying that the Civil Rights Act of 1991 created an *entirely new cause of action* under § 1981. It is certainly consistent to say that only one cause of action has always existed, though the definition of it—its formulation—was changed in a way that should not be applied retroactively to cases brought between the time that the Court decided *Patterson* and the time that Congress passed the Civil Rights Act of 1991.

four-year limitations period of § 1658 to claims arising under § 1981. These courts have found that the amendments to § 1981, effected by the Civil Rights Act of 1991, were "not merely technical in nature." *Alexander*, 990 F.Supp. at 1308; *accord Miller*, 56 F.Supp.2d at 965, *Rodgers*, 35 F.Supp.2d at 977, *Stewart*, 1998 WL 880462, at * 4–*5; *cf. MCI Telecomms. Corp.*, 1998 WL 156674, at *4 (citing *Alexander* and finding that the amendments included within the Telecommunications Act of 1996 also were not merely technical in nature and therefore § 1658 provides the relevant statute of limitations). They reason that the 1991 amendments to § 1981 created new substantive rights and provided for a cause of action based upon "post-contract formation discriminatory conduct." *Alexander*, 990 F.Supp. at 1308; *accord Stewart*, 1998 WL 880462, at * 4–*5; *see also Miller*, 56 F.Supp.2d at 965 (finding new cause of action created by the Civil Rights Act of 1991), *Rodgers*, 35 F.Supp.2d at 977 (same).[7] Having found the 1991 amendments "not merely technical in nature," these courts held that § 1981 was "re-enacted" by the Civil Rights Act of 1991 and therefore falls within the purview of § 1658. *See Miller*, 56 F.Supp.2d at 964, *Rodgers*, 35 F.Supp.2d at 977. After examining these arguments, we respectfully disagree with the holdings in *Miller*, *Rodgers*, *Stewart*, and *Alexander*.

To the extent that other courts have relied on the phrase "non-technical amendments" as a shorthand for determining whether the Civil Rights Act of 1991 was a "claim-creating statute," we are of the view that these holdings fail to account for § 1981's history, as we have recounted it in this entry. We conclude, therefore, for the above-explicated reasons, that the long-standing practice of borrowing Indiana's two-year statute of limitations period for personal injury actions remains applicable to claims arising under § 1981.

### 3. Accrual of the cause of action.

Having determined that the appropriate limitations period is two years, we now address the question of when precisely Hardin's cause of action accrued.[8] Defendant argues that the cause of action accrued on January 2, 1997, the date when Hardin was advised that she would not be interviewed for or selected for the position of Customer Service Manager. Hardin's view differs, saying that we should begin calculating her limitations period several weeks later when she first learned that two white individuals had been hired for the positions. Defendant rejoins that Plaintiff has misapprehended the controlling precedents and is confusing the doctrines of accrual and equitable tolling. Defendant contends that the proper date to begin the limitations period remains January 2, 1997 and that any equitable tolling

---

**7.** *Alexander* takes the argument one step further, and in our view goes too far. *Alexander* states that "[t]he whole statute was enacted on November 21, 1991." *Id.* at 1308 (referring to the amendments to § 1981 found in the Civil Rights Act of 1991). Since Section 1981 had been entirely recodified, "[c]laims arising under Section 1981 after November 21, 1991, would be claims arising under an Act of Congress enacted after Section 1658. Whether such claims also were viable under a previously enacted version of the statute is irrelevant." *Id.* However, this argument ignores that § 1658 was meant only to apply to "claim-creating" statutes. Applying the logic of *Alexander* would mean that any re-codification would give rise to § 1658's limitation period. While this may be a plausible way to establish a uniform federal statute of limita-

tions, it seems clearly to hit wide of the mark. We must undertake the statutory interpretation before us without reaching out in an unwarranted and perhaps exaggerated effort to force a wider result.

**8.** Although Count I incorporates all of the Complaint's factual averments, clearly those allegations dealing with Hardin's pay dating back to 1978 and CNA's denial of a promotion in April 1996 are barred by the two-year statute of limitations. Both parties appear to have reached this conclusion and therefore focused their arguments on CNA's refusal to allow Hardin to interview for the open customer service manager positions on January 2, 1997. Accordingly, we also focus our attention on these issues.

arguments that would otherwise extend the limitations period beyond January 2, 1999 are unavailable to the Plaintiff. We hold that the Defendant's reading of Seventh Circuit precedent is correct and that Plaintiff's cause of action accrued on January 2, 1997 with the limitations period ending, therefore, on January 2, 1999. Under this ruling, Count I of Plaintiff's complaint is barred by the two-year statute of limitations and, accordingly, we *GRANT* Defendant's motion to dismiss.

■■■ Accrual refers to the date on which the statute of limitations begins to run. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990). Although we draw on state law for the statutes of limitations periods, federal common law determines when a plaintiff's cause of action accrues. *See Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir.1996), *Tolle v. Carroll Touch Inc.*, 977 F.2d 1129, 1138 (7th Cir.1992), *Cada*, 920 F.2d at 450. An employment discrimination cause of action accrues when an adverse employment action is taken and communicated to the plaintiff. *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995), *Cada*, 920 F.2d at 449–50; *see also Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that § 1981 claim accrues at the time of the employment decision which negatively impacts the plaintiff, not when the consequences of that decision later come into effect); *cf. Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994) (holding that ERISA cause of action accrued when the plaintiff was terminated, not when he ascertained the alleged unlawful nature of the layoff). "A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Thelen*, 64 F.3d at 267.

The plaintiff's injury is tied necessarily to the adverse employment action. This remains true whether the adverse employment action is termination, a refusal to promote, or a refusal to hire. *See Ricks*, 449 U.S. at 258, 101 S.Ct. 498 (injury occurred when decision was made to deny plaintiff tenure at university), *Thelen*, 64 F.3d at 267 ("Thelen's injury was his termination."), *Teumer*, 34 F.3d at 550 ("Teumer's alleged injuries were the layoff and the timing of the recall."), *Cada*, 920 F.2d at 450 (communication of the decision to fire plaintiff was the injury).

Although Plaintiff cites *Cada* as support for her argument that her cause of action did not accrue until she found out that the Defendant had hired two white individuals to replace her, she misconstrues the holding of this case.[9] In *Cada*, the Seventh Circuit was faced with an age discrimination case brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq. Id.* Although certain of the facts were in dispute, the court found that on May 5, the plaintiff had been informed by the company's director of sales and marketing that he would be terminated, on May 22 the plaintiff had been informed by the vice president for marketing that there was nothing that could be done about the decision, and on July 7 his replacement appeared. *See id.* at 448–49. While the court stated that the statute of limitations does not accrue until the plaintiff "discovers that he has been injured," *id.* at 450, that opinion also made it clear that the phrase "discovers that he had been injured" refers to the discovery *"that a decision to terminate him had been made." Id.* (emphasis added). The court unequivocally held that the cause of action accrued, at the latest, on May 22. *See id.*

■■■ In our case, the statute of limitations on Hardin's § 1981 claim began to

9. As we discuss below, both *Cada* and *Brennan v. Daley*, 929 F.2d 346 (7th Cir.1991), which Hardin relies upon as authority for the assertion that her claim was timely filed, were in fact addressing the doctrine of equitable tolling, not accrual. *Cada*, 920 F.2d at 453, *Brennan*, 929 F.2d at 349. In *Cada*, in fact, the court takes pains to explain the difference between the doctrines of accrual and equitable tolling. *Id.* at 450–51.

run when she suffered her injury, that is, when she was allegedly denied the opportunity to interview for the customer service manager position. Hardin, herself, has stated that this decision not to interview her was communicated to her on or about January 2, 1997. *See* Compl. ¶ 16, Pl.'s Opp'n at 2. The two-year statute of limitations thus began to run on January 2, 1997, once Defendant's decision was communicated to her, not several weeks later when she was informed that the Defendant had hired two, arguably less qualified white people to fill the open positions. In the absence of an equitable reason to extend the limitations period, the statute of limitations must be deemed to have run on Hardin's § 1981 claim by January 2, 1999.

### 4. Equitable tolling.

Although Hardin does not make the argument explicitly, the authorities cited by her to support her claim that her § 1981 action was timely filed actually deal with equitable tolling, not accrual. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. If, at the time an injury occurs, a reasonable person in Plaintiff's position could not have known that it was the result of some unlawful act, she "could appeal to the doctrine of equitable tolling to suspend the running of the statute of limitations for such time as was reasonably necessary to conduct the necessary inquiry." *Id.* Thus, we turn to decide when Hardin "had sufficient information to be held to have sufficient knowledge of the basis for a . . . complaint . . .". *Brennan*, 929 F.2d at 349. However, since equitable tolling is an equitable doctrine, there is no guaranteed "automatic extension of the statute of limitations." *Cada*, 920 F.2d at 452. Plaintiff is entitled to extra time only if she can show that "[she] needs it." *Id.*

We presume that the plaintiff could have and should have brought suit within the statutory period assuming she had received the necessary information to bring her claim before the period ended. *See id.*

at 453; *see also Brennan*, 929 F.2d at 349 (applying the doctrine of equitable tolling where plaintiff did not obtain the vital information until long after the statute of limitations had run on his claim). In *Cada*, the doctrine was not applied to toll the period where the plaintiff's discovery that he had been replaced by a younger person had been delayed for two weeks, because he still had eight months before the statute of limitations expired on his ADEA claim. *Id.* at 452. In *Tolle*, the Seventh Circuit cited the "brevity of any delay caused by the [one month] lack of information" and refused to extend the statute of limitations where the plaintiff obtained the "information vital to his claim" four years and eleven months before the statute of limitations expired. *Tolle*, 977 F.2d at 1142. In *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206 (7th Cir.1993), the Seventh Circuit noted that plaintiff still had "several months to file his claim" within the original limitations period after finding out the alleged "necessary information" and refused to extend the limitations period "when the plaintiff still had sufficient time after the tolled period to file suit." *Id.* at 1213.

Like the plaintiffs in *Cada, Tolle,* and *Unterreiner,* Hardin asserts in the case at bar that she did not have the all of the necessary information for her claim on the date of her alleged injury. Although the Defendant's refusal to interview Hardin for the promotion occurred on January 2, 1997, she did not learn until several weeks later that two white individuals had been hired for the open manager positions. *See* Compl. ¶ 16–18, Pl.'s Opp'n at 2, 5. Even if we accept Plaintiff's assertion that this hiring information was vital to her claim, she nonetheless learned of it within weeks of the commencement of the statutory period of limitations, allowing her almost all of the ensuing two years to get her lawsuit on file. We regard the lapse of a few weeks as nothing more than an inconsequential delay, after which she had ample time and opportunity to file her

claim. Accordingly, we hold that the statute of limitations expired on Hardin's § 1981 claim on January 2, 1999, four days before her Complaint was filed. Count I is thus out of time and fails to state a claim upon which relief may be granted. Defendant's motion to dismiss Count I is *GRANTED*.[10]

### *Conclusion*

For the reasons explicated above, to wit, that Hardin's claim arising under § 1981 is subject to a two-year statute of limitations and that it was filed beyond that time period, we *GRANT* Defendant's Motion to Dismiss Count I of Plaintiff's Complaint.

---

**10.** Having determined that Hardin's claim fails because it was not filed within the two-year statute of limitations, we do not address Defendant's second argument that Count I should be dismissed because it fails to allege a contractual relationship giving rise to a claim under § 1981.